**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-1645

CARL R. SUMMERS,

Plaintiff - Appellant,

v.

ALTARUM INSTITUTE, CORPORATION,

Defendant - Appellee.

-------------------------------

AARP; NATIONAL EMPLOYMENT LAWYERS ASSOCIATION,

Amici Supporting Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Gerald Bruce Lee, District Judge. (1:12-cv-01493-GBL-IDD)

Argued: December 10, 2013          Decided: January 23, 2014

Before MOTZ, AGEE, and DIAZ, Circuit Judges.

Reversed and remanded by published opinion. Judge Motz wrote the opinion, in which Judge Agee and Judge Diaz joined.

**ARGUED**: David Scher, THE EMPLOYMENT LAW GROUP, PC, Washington, D.C., for Appellant. Paul William Coughenour, CLARK HILL PLC, Detroit, Michigan, for Appellee. **ON BRIEF**: R. Scott Oswald, THE EMPLOYMENT LAW GROUP, PC, Washington, D.C., for Appellant. Carly E. Osadetz, CLARK HILL PLC, Detroit, Michigan, for

Appellee.   Rebecca Hamburg Cappy, NATIONAL EMPLOYMENT LAWYERS ASSOCIATION, San Francisco, California; Daniel B. Kohrman, AARP FOUNDATION LITIGATION, Washington, D.C.; Melvin Radowitz, AARP, Washington, D.C., for Amici Supporting Appellant.

DIANA GRIBBON MOTZ, Circuit Judge:

Pursuant to recent amendments to the Americans With Disabilities Act, a sufficiently severe temporary impairment may constitute a disability. Because the district court held to the contrary, we reverse and remand.

I.

A.

Carl Summers appeals the dismissal of his complaint for failure to state a claim on which relief can be granted. Accordingly, we recount the facts as alleged by Summers. Minor v. Bostwick Labs, Inc., 669 F.3d 428, 430 n.1 (4th Cir. 2012).

In July 2011, Summers began work as a senior analyst for the Altarum Institute, a government contractor with an office in Alexandria, Virginia. Summers's job required him to travel to the Maryland offices of Altarum's client, the Defense Centers of Excellence for Psychological Health and Traumatic Brain Injury ("DCoE"). At DCoE, Summers conducted statistical research, wrote reports, and made presentations. Altarum policy authorized employees to work remotely if the client approved. The client, here DCoE, preferred contractors to work on-site during business hours, but permitted them to work remotely from home when "putting in extra time on [a] project."

3

On October 17, 2011, Summers fell and injured himself while exiting a commuter train on his way to DCoE. With a heavy bag slung over his shoulder, he lost his footing and struck both knees against the train platform. Paramedics took Summers to the hospital, where doctors determined that he had sustained serious injuries to both legs. Summers fractured his left leg and tore the meniscus tendon in his left knee. He also fractured his right ankle and ruptured the quadriceps-patellar tendon in his right leg. Repairing the left-leg fracture required surgery to fit a metal plate, screws, and bone into his tibia. Treating Summers's ruptured right quadriceps required another surgery to drill a hole in the patella and refasten his tendons to the knee.

Doctors forbade Summers from putting any weight on his left leg for six weeks and estimated that he would not be able to walk normally for seven months at the earliest. Without surgery, bed rest, pain medication, and physical therapy, Summers alleges that he would "likely" not have been able to walk for more than a year after the accident.

While hospitalized, Summers contacted an Altarum human-resources representative about obtaining short-term disability benefits and working from home as he recovered. The Altarum representative agreed to discuss "accommodations that would allow Summers to return to work," but suggested that Summers

4

"take short-term disability and focus on getting well again." Summers sent emails to his supervisors at Altarum and DCoE seeking advice about how to return to work; he suggested "a plan in which he would take short-term disability for a few weeks, then start working remotely part-time, and then increase his hours gradually until he was full-time again."

Altarum's insurance provider granted Summers short-term disability benefits. But Altarum never followed up on Summers's request to discuss how he might successfully return to work. The company did not suggest any alternative reasonable accommodation or engage in any interactive process with Summers. Nor did Altarum tell Summers that there was "any problem with his plan for a graduated return to work." Instead, on November 30, Altarum simply informed Summers "that Altarum was terminating [him] effective December 1, 2011, in order to place another analyst in his role at DCoE."

B.

In September 2012, Summers filed a complaint in the Eastern District of Virginia alleging two claims under the Americans With Disability Act ("ADA" or "Act"). First, Summers asserted that Altarum discriminated against him by wrongfully discharging him on account of his disability. Second, Summers asserted that Altarum failed to accommodate his disability. After Summers amended the complaint in October 2012, the district court

5

granted Altarum's Rule 12(b)(6) motion and dismissed both claims without prejudice.

Rather than filing a second amended complaint, Summers filed a new lawsuit in December 2012 presenting essentially the same two claims. A few months later, the district court again granted Altarum's motion to dismiss both claims, this time with prejudice. First, the court dismissed the wrongful-discharge claim on the ground that Summers had failed to allege that he was disabled. The court reasoned that a "temporary condition, even up to a year, does not fall within the purview of the [A]ct" and so "the defendant's not disabled." The court further suggested that Summers was not disabled because he could have worked with the assistance of a wheelchair. Second, the court dismissed Summers's failure-to-accommodate claim on the ground that Summers failed to allege that he had requested a reasonable accommodation. The court reasoned that an employee bears the burden of requesting a reasonable accommodation, and that Summers's proposal to work temporarily from home was unreasonable "because it sought to eliminate a significant function of the job."

On appeal, Summers challenges only the district court's dismissal of his wrongful-discharge claim. He does not contest the court's dismissal of his failure-to-accommodate claim, and so we do not consider it.

6

II.

To survive a motion to dismiss, a complaint must state "a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). We review de novo an appeal from a Rule 12(b)(6) dismissal, accepting the complaint as true and drawing reasonable inferences in the plaintiff's favor. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009).

A.

The ADA makes it unlawful for covered employers to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a) (2012). The Act prohibits covered employers from discharging qualified employees because they are disabled. Id. To establish a wrongful-discharge claim, a plaintiff must show, among other things, that he suffered from a "disability." Young v. United Parcel Serv., 707 F.3d 437, 443 (4th Cir. 2013).

Under the ADA, a "disability" may take any of the following forms: (1) "a physical or mental impairment that substantially limits one or more major life activities" (the "actual-disability" prong); (2) "a record of such an impairment" (the "record-of" prong); or (3) "being regarded as having such an impairment" (the "regarded-as" prong). 42 U.S.C. § 12102(1). Summers alleges that he was disabled under the ADA's actual-

7

disability prong. Specifically, he asserts that his impairment "substantially limit[ed]" his ability to walk -- which the ADA recognizes as one of the "major life activities" whose substantial limitation qualifies as a disability. Id. § 12102(2)(A). Accordingly, if Summers's impairment substantially limited his ability to walk, he suffered a "disability" for purposes of the ADA.

## B.

In September 2008, Congress broadened the definition of "disability" by enacting the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 ("ADAAA" or "amended Act"). In response to a series of Supreme Court decisions that Congress believed improperly restricted the scope of the ADA, it passed legislation with the stated purpose of "reinstating a broad scope of protection to be available under the ADA." Id. § 2(b)(1). Particularly relevant to this case, Congress sought to override Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184, 199 (2002), in which the Supreme Court had adopted a strict construction of the term "disability" and suggested that a temporary impairment could not qualify as a disability under the Act. Congress believed that Toyota set an "inappropriately high level of limitation necessary to obtain coverage under the ADA." Pub. L. No. 110-325, § 2(b)(5).

8

Abrogating Toyota, the amended Act provides that the definition of disability "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by [its] terms." 42 U.S.C. § 12102(4)(A). Further, Congress instructed that the term "substantially limits" be interpreted consistently with the liberalized purposes of the ADAAA. Id. § 12102(4)(B).[1] And Congress directed the Equal Employment Opportunity Commission ("EEOC") to revise its regulations defining the term "substantially limits" to render them consistent with the broadened scope of the statute. Pub. L. No. 110-325, § 2(b)(6).

After notice and comment, the EEOC promulgated regulations clarifying that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage" and that the term is "not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i) (2013). The EEOC regulations also expressly provide that "effects of an impairment lasting or expected to last fewer than six months can be substantially limiting" for purposes of proving an actual disability. Id. § 1630.2(j)(1)(ix) (emphasis added).

---

[1] The ADAAA provides, with respect to the "regarded-as" prong, that a plaintiff will not be disabled if his impairment is "transitory and minor," i.e. of "an actual or expected duration of 6 months or less." Id. § 12102(3)(B). It contains no similar durational requirement for the "actual-disability" prong.

9

According to the appendix to the EEOC regulations, the "duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity." Id. § 1630.2(j)(1)(ix)(app.). Although "[i]mpairments that last only for a short period of time are typically not covered," they may be covered "if sufficiently severe." Id. The EEOC appendix illustrates these principles: "[I]f an individual has a back impairment that results in a 20-pound lifting restriction that lasts for several months, he is substantially limited in the major life activity of lifting, and therefore covered under the first prong of the definition of disability." Id.

## III.

In dismissing Summers's wrongful-discharge claim, the district court held that, even though Summers had "suffered a very serious injury," this injury did not constitute a disability because it was temporary and expected to heal within a year. That holding represented an entirely reasonable interpretation of Toyota and its progeny. But in 2008, Congress expressly abrogated Toyota by amending the ADA. We are the first appellate court to apply the amendment's expanded

10

definition of "disability."[2]  Fortunately, the absence of appellate precedent presents no difficulty in this case: Summers has unquestionably alleged a "disability" under the ADAAA sufficiently plausible to survive a Rule 12(b)(6) motion.

A.

Summers alleges that his accident left him unable to walk for seven months and that without surgery, pain medication, and physical therapy, he "likely" would have been unable to walk for far longer.[3]  The text and purpose of the ADAAA and its

---

[2] In Reynolds v. American National Red Cross, 701 F.3d 143, 151-52 (4th Cir. 2012), we briefly discussed the ADAAA before declining to apply the statute retroactively.  In the course of our discussion we noted that the plaintiff's impairment -- a minor lifting restriction -- was not severe enough to constitute a disability even under the ADAAA's liberal new standard.  Id. at 154 n.10.  But we did not suggest, let alone hold, that the ADAAA excluded temporary impairments from its definition of disability.

[3] In enacting the ADAAA, Congress clarified that courts must disregard so-called "mitigating measures" when determining whether an impairment constitutes a disability.  Pub. L. No. 110-325, § 2(b)(2).  The new statute and regulations require courts to evaluate a plaintiff's impairment as it would manifest without treatments such as medication, mobility devices, and physical therapy.  42 U.S.C. § 12102(4)(E)(i); 29 C.F.R. § 1630.2(j)(5).  A proposed but rejected regulation had included as an example of a mitigating measure "surgical interventions, except for those that permanently eliminate an impairment."  76 Fed. Reg. 16,978, 16,983 (Mar. 25, 2011).  The EEOC omitted this example due to the public's confusion over how it would apply, instead explaining that whether a given surgery constitutes a mitigating measure should be determined "on a case-by-case basis."  Id.  Because Summers's impairment could constitute a disability with or without surgery, we need not address whether his surgeries constituted mitigating measures.

11

implementing regulations make clear that such an impairment can constitute a disability.

In the amended Act, after concluding that courts had construed the term "disability" too narrowly, Congress stated that it intended to liberalize the ADA "in favor of broad coverage." 42 U.S.C. § 12102(4)(A). Congress also mandated that the ADA, as amended, be interpreted as broadly as its text permits. Id. Furthermore, the EEOC, pursuant to its delegated authority to construe "disability" more generously, adopted new regulations providing that an impairment lasting less than six months can constitute a disability. 29 C.F.R. § 1630.2(j)(1)(ix). Although short-term impairments qualify as disabilities only if they are "sufficiently severe," id. § 1630.2(j)(1)(ix) (app.), it seems clear that the serious impairment alleged by Summers is severe enough to qualify. If, as the EEOC has concluded, a person who cannot lift more than twenty pounds for "several months" is sufficiently impaired to be disabled within the meaning of the amended Act, id., then surely a person whose broken legs and injured tendons render him completely immobile for more than seven months is also disabled.

In holding that Summers's temporary injury could not constitute a disability as a matter of law, the district court erred not only in relying on pre-ADAAA cases but also in misapplying the ADA disability analysis. The court reasoned

12

that, because Summers could have worked with a wheelchair, he must not have been disabled. This inverts the appropriate inquiry. A court must first establish whether a plaintiff is disabled by determining whether he suffers from a substantially limiting impairment. Only then may a court ask whether the plaintiff is capable of working with or without an accommodation. See 42 U.S.C. § 12102(4)(E)(i)(III) (the determination whether an impairment is substantially limiting "shall be made without regard to the ameliorative effects of . . . reasonable accommodations"). If the fact that a person could work with the help of a wheelchair meant he was not disabled under the Act, the ADA would be eviscerated.[4]

---

[4] To mount a wrongful-discharge claim, a plaintiff must also establish that he is a "qualified individual" -- i.e., that "with or without reasonable accommodation, [he] can perform the essential functions of [his] employment position." 42 U.S.C. § 12111(8). The district court did not address the "qualified individual" issue in the context of Summers's wrongful-discharge claim. But in dismissing Summers's failure-to-accommodate claim, the court suggested that Summers was not a "qualified individual" because his requested accommodation -- a temporary period of working remotely -- was unreasonable. Summers does not challenge the dismissal of his failure-to-accommodate claim and so, as explained above, we do not revisit that holding. But because the "qualified individual" issue likely will arise on remand of the wrongful-discharge claim, we note that an employee's accommodation request, even an unreasonable one, typically triggers an employer's duty to engage in an "interactive process" to arrive at a suitable accommodation collaboratively with the employee. See Wilson v. Dollar General Corp., 717 F.3d 337, 346-47 (4th Cir. 2013). "[L]iability for failure to engage in an interactive process depends upon a finding that, had a good faith interactive process occurred, the (Continued)

13

B.

Despite the sweeping language of the amended Act and the clear regulations adopted by the EEOC, Altarum maintains that a temporary impairment cannot constitute a disability. In doing so, Altarum principally relies on pre-ADAAA cases that, as we have explained, the amended Act abrogated. Additionally, Altarum briefly advances two other arguments why Summers's leg injuries did not "substantially limit" his ability to walk.

1.

First, Altarum contends that the EEOC regulations defining a disability to include short-term impairments do not warrant deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). Altarum argues that Congress's intent "not to extend ADA coverage to those with temporary impairments expected to fully heal is evident," because such a "dramatic expansion of the ADA would have been accompanied by some pertinent statement of Congressional intent." Altarum Br. 34-35.

When a litigant challenges an agency's interpretation of a statute, we apply the familiar two-step Chevron analysis.

_____

parties could have found a reasonable accommodation that would enable the disabled person to perform the job's essential functions." Id. at 347 (quoting Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 91 (1st Cir. 2012))(quotation marks omitted).

14

First, we evaluate whether Congress has "directly spoken" to the precise question at issue. If traditional rules of statutory construction render the intent of Congress clear, "that is the end of the matter." Chevron, 467 U.S. at 842. If the statute is "silent or ambiguous" with respect to the question at issue, we proceed to the second step -- determining whether the agency's interpretation of the statute is reasonable. Id. at 843. An agency's reasonable interpretation will control, even if better interpretations are possible. Id. at 843 n.11.

Although Altarum contends that Congress's intent to withhold ADA coverage from temporarily impaired employees is "evident," Altarum Br. 34, no such intent seems evident to us. To be sure, the amended Act does preserve, without alteration, the requirement that an impairment be "substantial" to qualify as a disability. But Congress enacted the ADAAA to correct what it perceived as the Supreme Court's overly restrictive definition of this very term. And Congress expressly directed courts to construe the amended statute as broadly as possible. Moreover, while the ADAAA imposes a six-month requirement with respect to "regarded-as" disabilities, it imposes no such durational requirement for "actual" disabilities, thus suggesting that no such requirement was intended. See Hamdan v. Rumsfeld, 548 U.S. 557, 578 (2006) ("[A] negative inference may be drawn from the exclusion of language from one statutory

15

provision that is included in other provisions of the same statute."). For these reasons, we must reject Altarum's contention that the amended Act clearly evinces Congress's intent to withhold ADA coverage for temporary impairments. At best, the statute is ambiguous with respect to whether temporary impairments may now qualify as disabilities.

Accordingly, we turn to step two of the Chevron analysis -- determining whether the EEOC's interpretation is reasonable. We conclude that it is. The EEOC's decision to define disability to include severe temporary impairments entirely accords with the purpose of the amended Act. The stated goal of the ADAAA is to expand the scope of protection available under the Act as broadly as the text permits. The EEOC's interpretation -- that the ADAAA may encompass temporary disabilities -- advances this goal. Moreover, extending coverage to temporarily impaired employees produces consequences less "dramatic" than Altarum seems to envision. Prohibiting employers from discriminating against temporarily disabled employees will burden employers only as long as the disability endures. Temporary disabilities require only temporary accommodations.

2.

Alternatively, Altarum argues that, even deferring to the EEOC regulations, Summers's impairment does not qualify as a disability. Altarum maintains that the EEOC regulations do not

16

apply to Summers's impairment because those regulations do not cover "temporary impairments due to injuries" even if they do cover "impairments due to permanent or long-term conditions that have only a short term impact." Altarum Br. 37.

But, in fact, the EEOC regulations provide no basis for distinguishing between temporary impairments caused by injuries, on one hand, and temporary impairments caused by permanent conditions, on the other. The regulations state only that the "effects of an impairment lasting or expected to last fewer than six months can be substantially limiting" -- they say nothing about the cause of the impairment. 29 C.F.R. § 1630.2(j)(1)(ix).

Nor do the regulations suggest that an "injury" cannot be an "impairment." Rather, the EEOC defines an impairment broadly to include "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems," including the "musculoskeletal" system. Id. § 1630.2(h)(1). This expansive definition surely includes broken bones and torn tendons. And the EEOC elsewhere uses the terms "injury" and "impairment" interchangeably. See id. § 1630.2(j)(5) n.3 (app.); id. § 1630.15(f) (app.).

In sum, nothing about the ADAAA or its regulations suggests a distinction between impairments caused by temporary injuries and impairments caused by permanent conditions. Because Summers

17

alleges a severe injury that prevented him from walking for at least seven months, he has stated a claim that this impairment "substantially limited" his ability to walk.

IV.

Under the ADAAA and its implementing regulations, an impairment is not categorically excluded from being a disability simply because it is temporary.  The impairment alleged by Summers falls comfortably within the amended Act's expanded definition of disability.  We therefore reverse the district court's dismissal of Summers's wrongful-discharge claim and remand the case for further proceedings consistent with this opinion.

REVERSED AND REMANDED