**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1330
_____

CHAKA A. MATTHEWS,

Appellant

v.

PENNSYLVANIA DEPARTMENT OF CORRECTIONS; DAVID A. HUNTER; C.O.
ARNONE; ESTATE OF MEDICAL DIRECTOR JOHN R. BENNER, M.D.; MICHELE
SWANHART, CRNP; DANIELLE GLOTFELTY, PA-C; CORIZON HEALTH, INC.


On Appeal from the United States District Court
for the Western District of Pennsylvania
(No. 3:13-cv-00126)
District Judge:  Hon. Kim. R. Gibson
Submitted Pursuant to Third Circuit LAR 34.1(a)
February 9, 2015

Before:  CHAGARES, VANASKIE, and SHWARTZ, <u>Circuit Judges</u>.

(Filed: June 1, 2015)
_____

OPINION*
_____

CHAGARES, <u>Circuit Judge</u>.

    This is an action under the Rehabilitation Act, 29 U.S.C. §§ 794(a), <u>et seq.</u>, the

Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12132, <u>et seq.</u>, and 42 U.S.C. §

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

1983 involving the alleged failure of Pennsylvania Department of Corrections ("DOC") affiliated personnel to accommodate former inmate Chaka Matthews's Achilles tendinitis while he was a prisoner at the State Correctional Institution at Somerset, Pennsylvania ("SCI-Somerset"). The District Court dismissed Matthews's Amended Complaint ("complaint") for failure to state a claim. For the reasons that follow, we will affirm the dismissal of Matthews's § 1983 claim and his ADA and Rehabilitation Act claims against David A. Hunter, Corrections Officer Arnone, the Estate of Medical Director John R. Benner, Michele Swanhart, Danielle Glotfelty, and Corizon Health, Inc. We will vacate and remand as to Matthews's ADA and Rehabilitation Act claims against the Pennsylvania Department of Corrections.

## I.

We write solely for the parties and therefore recite only the facts necessary to our disposition.[1] In early 2011, Matthews began experiencing swelling and pain in his left heel and ankle, which caused him to walk with a limp. Appendix ("App.") 22. Michele Swanhart, a nurse practitioner at SCI-Somerset, examined the ankle several times but did not prescribe pain medication. App. 23. In May, John R. Benner, then the Medical Director at SCI-Somerset, diagnosed Matthews with Achilles tendinitis. App. 23. The medical staff noted Matthews's limp during subsequent examinations but left blank the "Lower Bunk" optional recommendation on the "Physician's Order" forms they

---

[1] Insofar as we are reviewing a motion to dismiss the complaint for failure to state a claim, we will accept as true the allegations of the complaint.

2

completed for Matthews. App. 23. Matthews does not allege that he requested a lower bunk or a lower-tier cell during any of these medical appointments.

In July 2011, Danielle Glotfelty, a physician's assistant at SCI-Somerset, prescribed an air cast and Meloxicam and directed Matthews to limit his participation in sports and avoid walking on wet or uneven surfaces. App. 23-24. The air cast caused Matthews further difficulty walking and climbing to and from his top bunk. App. 24. On July 17, 2011, Matthews was too slow to descend from his bunk for a count. App. 24. He received a misconduct report and a seven-day cell restriction for failing to stand for count. App. 24.

On July 20, 2011, the air cast was replaced with a fiberglass cast, and Swanhart prescribed crutches for six weeks. App. 25. The fiberglass cast and crutches made it even more difficult for Matthews to manage stairs and his top bunk. App. 25. At this point, Matthews asked Swanhart to recommend a reassignment to a bottom bunk or a bottom-tier cell, but Swanhart did not make the recommendation. App. 25. Matthews asked Corrections Officer Arnone[2] for a reassignment and submitted an Inmate Disability Accommodation Request Form, in which he described his difficulty with the cast and crutches and asked "to be moved to the bottom tier bottom bunk A.S.A.P. because [he didn't] feel stable going up and down the steps." App. 26. Nothing came of these requests. App. 28. Matthews also submitted a request for a wheelchair because he feared his cast and crutches would cause him to fall. App. 26. Swanhart denied this request as well. App. 26.

---

[2] The complaint did not provide Officer Arnone's first name.

3

Matthews alleges that his inability to descend the stairs safely limited his access to various programs and services. "[S]everal times" he was unable to use the phones, he "frequently missed meals due to his inability to reach the dining hall in time," and he "experienced diminished access" to the commissary, recreation, and religious services. App. 27.

On July 31, 2011, Matthews fell down a flight of stairs. He suffered multiple contusions. App. 28. Only then did he receive a lower bunk on a bottom-tier cell.

In June 2013, Matthews filed suit against the Pennsylvania Department of Corrections, Corrections Officer David A. Hunter, Corrections Officer Arnone, Medical Director John R. Benner,[3] Michele Swanhart, Danielle Glotfelty, and Corizon Health, Inc., alleging violations of the Eighth Amendment, the ADA, and the Rehabilitation Act. The defendants moved to dismiss for failure to state a claim. On December 19, 2013, the Magistrate Judge issued a Report and Recommendation in which he recommended granting the motion to dismiss. The Magistrate Judge found nothing in the complaint to suggest that the medical staff were providing plainly inadequate treatment for Matthews's tendinitis or that the corrections officers were deliberately indifferent in assuming the medical department's recommendations (or lack thereof) were proper. App. 11. The Magistrate Judge added that a lower bunk would not have prevented Matthews's fall on the stairs, App. 14, and that the defendants' failure to assign Matthews to a lower cell was not a proximate cause of his fall, App. 15. As to the ADA and Rehabilitation Act claims,

---

[3] Dr. Benner passed away before Matthews filed suit. The complaint names his estate as a defendant.

the Magistrate Judge held that although there was no per se lower time limit on the duration of an impairment that constitutes a disability, an impairment like Matthews's that was both minor in its restrictions and lasted only a few months did not qualify as a disability; to hold otherwise would risk turning "every ordinary degradation of one's mobility" into a qualifying disability. App. 18. The District Court adopted the Report and Recommendation and dismissed Matthews's complaint. Matthews timely appealed.

## II.[4]

We exercise plenary review over the District Court's grant of a motion to dismiss. Fowler v. UPMC Shadyside, 578 F.3d 203, 206 (3d Cir. 2009). In so doing, "[w]e take as true all the factual allegations of the [complaint] and the reasonable inferences that can be drawn from them, but we disregard legal conclusions and recitals of the elements of a cause of action, supported by mere conclusory statements." Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010) (quotation marks omitted and citation omitted). "[W]hen the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the claim has "facial plausibility" and the complaint will survive the defendant's motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## III.

Matthews argues the District Court erred in dismissing his ADA and Rehabilitation Act claims against the DOC. The ADA and the Rehabilitation Act have

---

[4] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (a)(4). This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

the same standard for liability and are to be interpreted consistently. <u>Macfarlan v. Ivy Hill SNF, LLC</u>, 675 F.3d 266, 274 (3d Cir. 2012). They prohibit federally funded state programs from discriminating against a disabled individual solely by reason of his or her disability. Enforcing regulations require public entities to "make reasonable modifications" to their programs and policies in order to avoid discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(7). To state a claim under these acts, a plaintiff must show (a) that she has a disability, (b) that she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, and (c) that such exclusion, denial of benefits, or discrimination was by reason of her disability. <u>See</u> 29 U.S.C. § 794; 42 U.S.C. § 12132.

A.

Matthews insists he sufficiently alleged that he was disabled for purposes of the ADA and Rehabilitation Act. Under the ADA and the Rehabilitation Act, a "disability" may be: (1) "a physical or mental impairment that substantially limits one or more major life activities"; (2) "a record of such an impairment"; or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Matthews alleges that he was disabled under the ADA's first, or "actual-disability," prong. Specifically, he asserts that his impairment "substantially limit[ed]" his ability to walk — which the ADA recognizes as one of the "major life activities" whose substantial limitation qualifies as a disability. <u>Id.</u> § 12102(2)(A). Accordingly, if Matthews's impairment substantially limited his ability to walk, he suffered a "disability" for purposes of the ADA and the Rehabilitation Act.

6

The determination of whether an individual is substantially limited in a major life activity must be made "on a case-by-case basis." Albertson's Inc. v. Kirkingburg, 527 U.S. 555, 566 (1999). What matters is not the name or diagnosis of the impairment but "the effect of the impairment on the life of the individual." Id. "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). "Nonetheless, not every impairment will constitute a disability within the meaning of this section." Id.

In the wake of Supreme Court decisions and EEOC regulations construing "disability" to mean only "permanent or long term" impairments, see, e.g., Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 198 (2002), the 2008 ADA Amendments Act ("ADAAA") was enacted to clarify that the definition of "disability" should be construed "in favor of broad coverage of individuals . . . to the maximum extent permitted." 42 U.S.C. § 12102(4)(A). Therefore, courts must interpret the term "substantially limits" consistently with the liberalized purposes of the ADAAA. Id. § 12102(4)(B). The EEOC subsequently updated its regulations to provide that impairments lasting fewer than six months may be substantially limiting. 29 C.F.R. § 1630.2(j)(1)(ix). A comment on the rule provides the following example: "[I]f an individual has a back impairment that results in a 20-pound lifting restriction that lasts for several months, he is substantially limited in the major life activity of lifting, and therefore covered under the first prong of the definition of disability." 29 C.F.R. § 1630.2(j)(1)(ix) (App.). Thus, under the current regulations, the duration of an

7

impairment is just one factor to consider in determining whether an impairment substantially limits a major life activity.

Our Court has not yet interpreted the ADAAA's effect on short-term-disability-based claims. The Court of Appeals for the Fourth Circuit, however, addressed the issue in Summers v. Altarum Institute, Corportation, 740 F.3d 325 (4th Cir. 2014). There, a plaintiff fractured his left leg and right ankle, tore the meniscus tendon in his left knee, and ruptured the quadriceps-patellar tendon in his right leg. Id. at 327. He was not able to put weight on his left leg for six weeks, and doctors estimated he would not walk normally for at least seven months. Id. The court held that this impairment was a disability, notwithstanding its temporary duration. Id. at 330. It reasoned that if "a person who cannot lift more than twenty pounds for 'several months' is sufficiently impaired to be disabled within the meaning of the amended Act, then surely a person whose broken legs and injured tendons render him completely immobile for more than seven months is also disabled." Id. (internal citation omitted).

The question before us is whether Matthews's impairment is analogous to the impairment in Summers and the lifting restriction in the EEOC example. In answering this question we must set aside the mild-sounding diagnosis and perform an individualized assessment of the effect of the impairment on the life of Matthews. Alberton's, 527 U.S. at 566; 29 C.F.R. § 1630.2(j)(1)(iv). Matthews claims he "experienced considerable difficulty walking" no later than March 2011. App. 22. The air cast he received in early July made it more difficult for him to walk. App. 24. And on July 20, he received a fiberglass cast and crutches, making it still more difficult to

8

walk or ascend and descend the staircase to his cell. App. 25. Matthews was apparently so uncomfortable that he requested a wheelchair "due to weak upper body strength and because he felt that he was going to fall down with his cast and crutches." App. 26. Difficulty descending the stairs left Matthews unable on some occasions to use the phone, get to the dining hall in time for meals, or attend religious services. App. 27.

A certain lack of specificity in Matthews's complaint makes some of his claims difficult to evaluate. Was he physically unable to cover the distance to the dining hall in the period of time allowed by prison officials, or did he fail to account for a slower moving speed in planning his trips for meals? How many meals did he miss? Did "considerable difficulty walking" mean only that he was limping or that he was effectively immobile? To some extent, we share the District Court's skepticism that Matthews's impairment was more than an ordinary degradation of mobility, indistinguishable from a severe ankle sprain. See, e.g., Bush v. Donahoe, 964 F. Supp. 2d 401, 421 (W.D. Pa. 2013) (finding a plaintiff's ankle sprain did not qualify her as disabled when she provided no evidence of her level of pain and could not specifically identify the limitations her injury placed on her).

Nonetheless, on a motion to dismiss, we are bound take all factual allegations as true and make all reasonable inferences in the plaintiff's favor. Matthews alleges an impairment that compromised his walking ability for several months. We read "considerable difficulty walking," Matthews's request for a wheelchair, and his descriptions of the activities he could not attend as alleging that he was at times immobilized by pain in his heel. If a person who cannot lift more than twenty pounds for

9

several months is sufficiently impaired to be disabled within the meaning of the amended Act, then a person whose walking ability is so reduced that he cannot attend meals or safely descend the stairs is disabled as well. See id. Matthews's complaint alleges a disability. Whether he was in fact disabled is not a question we can answer on a motion to dismiss.

B.

Matthews further contends that the District Court erred in finding that the defendants did not deprive him of any benefits or programs for which he was otherwise qualified. He argues that his placement in an upper-level cell and the consequent need to descend the stairs limited his access to the phones, dining hall, recreational activities, and religious services. See App. 27. The District Court reasoned that restrictions on Matthews's ability to participate in sports and recreational activities were put in place as part of his medical treatment. Removing them would have exposed the defendants to liability for denying Matthews proper medical treatment. See App. 18. This line of thinking is correct so far as sports and recreation activities are concerned, but it does not answer all of the allegations of deprivation in the complaint.

The provision of food was surely a benefit Matthews was entitled to receive. While the complaint is, again, non-specific about why and how often Matthews missed meals, we read his complaint to allege that his Achilles tendinitis so limited him that, absent a relocation to a lower-tier cell, he was effectively forced to choose between food and safety. Given his allegation that a cast and crutches exacerbated his difficulty descending the stairs, and that he shared this concern with prison officials, we cannot say

10

the DOC made reasonable modifications in its policies in order to accommodate Matthews.

Matthews also asserts that Corrections Officer Hunter sentenced him to a seven-day cell restriction for missing count, depriving him of prison services, despite knowing that Matthews was unable to descend from his bunk and stand in time for the count. App. 24. Although prison officials are generally entitled to "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline to maintain institutional security," Bell v. Wolfish, 441 U.S. 520, 547 (1979), this will not always absolve them of their obligations under the ADA and the Rehabilitation Act. Matthews's complaint sufficiently alleges that he was deprived of public benefits that, with reasonable accommodation such as a lower bunk in a lower-tier cell, he would have been eligible to receive.

C.

Although we hold that Matthews states a claim under the ADA and the Rehabilitation Act against the DOC, the dismissal of statutory claims against defendants Hunter, Arnone, Swanhart, Glofelty, and Corizon Health, Inc. must be affirmed because they are not public entities subject to suit under the ADA or the Rehabilitation Act. See 42 U.S.C. § 12132 ("Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." (emphasis added)); 42 U.S.C. § 12131 (defining "public entity" as (a) any State or local government; (b) any department,

11

agency, special purpose district, or other instrumentality of a State or States or local government; and (c) the National Railroad Passenger Corporation, and any other commuter authority). With respect to Corrections Officers Hunter and Arnone, we agree with the Courts of Appeals for the Second and Eighth Circuits that Title II of the ADA does not provide for suits against state officers in their individual capacities. See Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001); Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc). And with respect to defendants Swanhart, Glotfelty, and Corizon Health, Inc., we agree with the Court of Appeals for the Eleventh Circuit that "a private corporation is not a public entity merely because it contracts with a public entity to provide some service." Edison v. Douberly, 604 F.3d 1307, 1310 (11th Cir. 2010); see also Green v. City of New York, 465 F.3d 65, 79 (2d Cir. 2006) (holding that a private hospital performing government services by contract is not an "instrumentality" of the government); Cox v. Jackson, 579 F. Supp. 2d 831, 852 (E.D. Mich. 2008) (holding that a private medical provider with a contract to serve a prison was not a government entity). We will therefore affirm the dismissal of all statutory claims except as to the DOC.

IV.

Finally, Matthews argues that the District Court erred in dismissing his claim that the defendants violated the Eighth Amendment's prohibition on cruel and unusual punishment through their deliberate indifference to his medical needs. "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009). Neither

12

negligence nor medical malpractice is sufficient to state a claim for deliberate indifference. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). "[T]he official[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). The Supreme Court has cited, as examples of deliberate indifference, cases where a doctor chose to throw away a prisoner's ear and stitch the wound, where a doctor injected a prisoner with penicillin knowing that the prisoner was allergic, and where a doctor compromised the success of a surgery by requiring a prisoner to stand despite contrary instructions of the surgeon. Estelle v. Gamble, 429 U.S. 97, 104 n.10 (1976).

Here, the allegations in the complaint demonstrate that medical officials were attentive to Matthews's impairment. They saw him regularly, prescribed him a cast and crutches, and advised him not to participate in certain physical activities during his recovery. See App. 23-25. If they exposed Matthews to greater risk of injury by refusing to recommend a cell reassignment, their mistake was negligence, not deliberate indifference.

As to the DOC and Corrections Officers Hunter and Arnone, in Spruill v. Gillis, we noted that non-medical prison officials are generally justified in relying on the expertise and care of prison medical providers. 372 F.3d 218, 236 (3d Cir. 2004). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be

13

chargeable with the Eighth Amendment scienter requirement of deliberate indifference."

Id.

The District Court correctly applied our decision in Spruill to this case. Although corrections officers were aware of Matthews's difficulty descending from his top bunk, using the stairs, and moving about on crutches, they were also justified in trusting that the medical professionals who regularly treated Matthews would recommend a bunk or cell reassignment if he needed one.

V.

For the foregoing reasons, we will affirm the dismissal of Matthews's § 1983 claim. We will affirm the dismissal of his ADA and Rehabilitation Act claims against David A. Hunter, Corrections Officer Arnone, the Estate of Medical Director John R. Benner, Michele Swanhart, Danielle Glotfelty, and Corizon Health, Inc. We will vacate the dismissal of his ADA and Rehabilitation Act claims against the Pennsylvania Department of Corrections and remand for further proceedings.

14