**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 20, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

STEVE F. SKERCE,

      Plaintiff - Appellant,

v.

TORGESON ELECTRIC COMPANY,

      Defendant - Appellee.

No. 19-3244
(D.C. No. 2:18-CV-02040-HLT)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES**, and **BACHARACH**, Circuit Judges.
_____

Steve F. Skerce filed a complaint asserting employment-related claims against his former employer, Torgeson Electric Company. The district court granted summary judgment on most of the claims, with two of the claims proceeding to trial. After a jury found in favor of Torgeson on those claims, the court entered judgment in favor of Torgeson. Mr. Skerce now appeals. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm in part and reverse in part.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.  Factual Background

The parties are familiar with the facts and we will only briefly summarize them here.  The relevant facts will be discussed in more detail with the issues on appeal.

Torgeson hired Mr. Skerce in October 2013 to work as an electrician on various projects.  While working on a project at a Dillons store, Mr. Skerce was written up for cursing on the jobsite.  Following that incident, Torgeson reassigned him to work at the Kansas Bureau of Investigation (KBI) building jobsite in September 2014.

On January 29, 2015, Mr. Skerce injured his elbow at work.  He then met with Darla Hamilton, who handled human resources for Torgeson, to discuss his elbow injury and workers' compensation claim.  Although Mr. Skerce was eligible to take leave under the Family Medical Leave Act (FMLA) due to his elbow injury, Ms. Hamilton did not advise him—either orally or in writing—that he was eligible for FMLA leave or any other unpaid time off.

Following his injury, Mr. Skerce's doctors imposed various work restrictions, and Torgeson accommodated those restrictions by having Mr. Skerce do light duty work.  Torgeson paid Mr. Skerce on days when light duty work was available and the workers' compensation insurer paid him on days when no such work was available.

On April 21, 2015, Mr. Skerce's doctors cleared him to return to full duty work.  Mr. Skerce called Ms. Hamilton to let her know he was cleared to return to full duty.  The next day, someone from Torgeson called him and said they would

2

have to see what job site they were going to put him on and what they had available. On April 23, Ms. Hamilton called Mr. Skerce to notify him that Torgeson was terminating his employment.

Mr. Skerce filed a complaint against Torgeson, alleging that Torgeson violated the FMLA by interfering with his rights under the Act and retaliating against him for exercising his rights under the Act; violated the Americans with Disabilities Act (ADA), as amended by the ADA Amendments Act of 2008 (ADAAA), and the Kansas Act Against Discrimination (KAAD) by failing to accommodate his disabilities, discriminating against him based on his disabilities, and retaliating against him for engaging in protected activity; and violated the Age Discrimination in Employment Act (ADEA) and the Kansas Age Discrimination in Employment Act (KADEA) by terminating him in part due to his age.

Torgeson moved for summary judgment on all claims, asserting that it "terminated Skerce's employment as part of a reduction in force that was implemented due to a work slowdown and reduced manpower needs." Aplt. App., Vol. I at 93. Torgeson further asserted that it had "identified Skerce as a 'substandard' employee to terminate in the event of a reduction in force . . . ." *Id.* at 93-94.

The district court granted the motion on most of the claims, but denied it with respect to Mr. Skerce's FLMA interference claim and his disability discrimination claim based on his diabetes. After a trial on those claims, a jury found Torgeson had not discriminated against Mr. Skerce based on his diabetes. The jury found Torgeson

3

interfered with Mr. Skerce's right to FMLA leave, but it also found the violation was not willful and Torgeson would have terminated Mr. Skerce regardless of his eligibility for FMLA leave. The district court entered judgment in favor of Torgeson.

II. Discussion

Mr. Skerce contends the district court erred by: permitting Torgeson to argue at trial that it terminated Mr. Skerce as part of a reduction in force (RIF); dismissing his ADEA and KADEA claims; dismissing his ADAAA claims for failure to accommodate, discrimination, and retaliation; and dismissing his FMLA retaliation claim. He also contends the jury's finding that Torgeson's interference with his FMLA rights was not willful was against the weight of the evidence presented at trial.

Most of Mr. Skerce's issues challenge the district court's summary judgment rulings. "We review summary judgment determinations de novo, applying the same standard as the district court." *Dewitt v. Sw. Bell Tel. Co.,* 845 F.3d 1299, 1306 (10th Cir. 2017). This requires us to view the facts in the light most favorable to the non-moving party. *See id.* "Generally, summary judgment should be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted).

On the question of whether the verdict was against the weight of the evidence:

> [O]ur review is limited to determining whether the record—viewed in the light most favorable to the prevailing party—contains substantial evidence to support the jury's decision. Substantial evidence is something less than the weight of the evidence, and is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, even if

4

> different conclusions also might be supported by the evidence. Thus, we may reverse a jury's verdict only if the evidence points but one way and is not susceptible to any reasonable inferences supporting the verdict.

*Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1247 (10th Cir. 2016) (citations and internal quotation marks omitted).

## A. *Error in Permitting RIF Argument*

Mr. Skerce asserts in the heading for his first argument that "[t]he trial court erred in permitting Torgeson to argue that Skerce was terminated as part of a reduction in force." Aplt. Opening Br. at 12 (boldface and capitalization omitted). But we are unable to discern what district court ruling Mr. Skerce is seeking review of with this argument. He does not explain how this issue was presented to the district court, nor does he cite to where in the record the court ruled on it. Mr. Skerce's brief therefore fails to comply with Tenth Circuit Rule 28.1(a), which requires that "[f]or each issue raised on appeal, all briefs must cite the precise references in the record where the issue was raised and ruled on." It also fails to comply with Federal Rule of Appellate Procedure 28(a)(6), which requires "a concise statement of the case setting out the facts relevant to the issues submitted for review, describing the relevant procedural history, and identifying the rulings presented for review, with appropriate references to the record (Rule 28(e))."

In its response to this argument, Torgeson explains Mr. Skerce filed a motion in limine seeking "to preclude Torgeson from presenting evidence of a RIF or lack of work in 2015 or that Skerce's performance or attitude were substandard." Aplee. Resp. Br. at 21. The district court denied Mr. Skerce's motion after construing it as

5

an improper attempt to "exclu[de] . . . a defense and not [to exclude] evidence." Aplt. App., Vol. VI at 1557. But it is not clear to us that Mr. Skerce is seeking review of the district court's denial of his motion in limine. While he mentions the hearing on his motion in limine, he does so only to complain about Torgeson's alleged change in its argument about the RIF. *See* Aplt. Opening Br. at 14. And Mr. Skerce does not offer any argument as to how the court erred in resolving that motion. *See id.* at 14-17.

Mr. Skerce fails to identify where he presented this issue to the district court, how the court ruled on it, or why that ruling was erroneous. We therefore conclude Mr. Skerce has waived this issue by failing to adequately brief it. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) ("Issues will be deemed waived if they are not adequately briefed." (alteration and internal quotation marks omitted)).

## B. *ADEA and KADEA claims*

Mr. Skerce next argues that the trial court erred in dismissing his ADEA and KADEA claims.[1] Because there was no direct evidence of discrimination, the district considered these claims "using the tripartite *McDonnell Douglas* burden-shifting analysis," *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1114 (10th Cir. 2007). The *McDonnell Douglas* analysis proceeds as follows:

---

[1] As the district court explained: "Both the ADEA and the KADEA prohibit discrimination on the basis of age in employment decisions; protection extends to individuals age 40 and older" and "[t]he analysis for claims of age discrimination is the same under both statutes." Aplt. App., Vol. V at 1322.

> [T]he plaintiff first bears the burden of proving a prima facie case of discrimination. If the plaintiff successfully proves a prima facie case, the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action. Once the employer identifies a legitimate reason for its action, the burden shifts back to the employee to prove that the proffered legitimate reason was a pretext for discrimination.

*Id.* at 1114-15 (citations omitted).

The district court determined Mr. Skerce established a prima facie case of discrimination, but the court further determined Torgeson articulated a legitimate, nondiscriminatory reason for his termination (the RIF). The court then concluded no reasonable jury could find that Torgeson's articulated reason for Mr. Skerce's termination was a pretext for discrimination. Although Mr. Skerce presented evidence regarding the employees Torgeson hired before and after his termination, many of the employees were not electricians and did not work any hours on the KBI project (Mr. Skerce's assigned project prior to his termination). The court further explained that "[t]o make a comparison demonstrating discrimination, a plaintiff must show that the employees were 'similarly situated'—'that is, reporting to the same supervisor, held to the same standards, and afoul of those standards to at least the same degree.'" Aplt. App., Vol. V at 1325 (quoting *Roberts v. Int'l Bus. Machs. Corp.*, 733 F.3d 1306, 1310 (10th Cir. 2013)). The court therefore concluded Mr. Skerce "fail[ed] to present any credible evidence on the issue of pretext with respect to his age discrimination claim," and granted summary judgment in favor of Torgeson. *Id.*

7

On appeal, Mr. Skerce does not address the district court's conclusion that he failed to present evidence that similarly situated employees were treated differently. He has therefore failed to show that the court erred in granting summary judgment on his age discrimination claims.

## C. *ADAAA claims*

Mr. Skerce argues the district court erred in dismissing his ADAAA claims for discrimination, failure to accommodate, and retaliation because the trial court did not properly analyze his impairments under the 2008 amendments to the ADA.[2]  We agree in part.[3]

### 1. Discrimination claim

A disability discrimination claim based on circumstantial evidence is also analyzed under the *McDonnell Douglas* burden-shifting scheme.  *See Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 896 (10th Cir. 2017).  To establish a prima facie case, a plaintiff "must present evidence that (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of his job with or without accommodations; and (3) he was terminated under circumstances which give rise to an inference that the termination was based on his disability."  *Smothers v.*

---

[2] The ADAAA's amendments to the ADA went into effect on January 1, 2009. ADAAA § 8, Pub. L. No. 110–325, 122 Stat. 3553 (2008).

[3] Mr. Skerce does not challenge the district court's dismissal of his state-law claim for discrimination under the KAAD.  Accordingly, any argument related to that claim is deemed waived and we do not consider it.  *See Folks v. State Farm Mut. Auto. Ins. Co.*, 784 F.3d 730, 737 (10th Cir. 2015).

*Solvay Chems., Inc.*, 740 F.3d 530, 544 (10th Cir. 2014) (brackets and internal quotation marks omitted). To satisfy the first element, a plaintiff must show he can meet one of the "three statutory definitions for 'disability.'" *Id.* Under the ADAAA, those are: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual [(the 'actual disability' prong)]; (B) a record of such an impairment [(the 'record of' prong)]; or (C) being regarded as having such an impairment . . . [(the 'regarded as' prong)]." 42 U.S.C. § 12102(1); *see also* 29 C.F.R. § 1630.2(g)(1) (same).

In response to summary judgment, Mr. Skerce argued he had a number of impairments that qualified as disabilities under all three statutory definitions. The district court concluded there was a factual dispute as to whether Mr. Skerce's diabetes qualified as a disability under the ADA, so his claim for discrimination based on diabetes went to trial. But the court determined that his other health conditions did not qualify as disabilities.

The court concluded the elbow injury was "merely a temporary condition—his doctor cleared him to return to full duty work after less than three months—and thus does not qualify as a disability under the ADA." Aplt. App., Vol. V at 1314. The court further concluded "as to the majority of Plaintiff's other ailments—specifically, his alleged high blood pressure, depression, chronic back pain, chronic knee pain, and joint pain—there is no record evidence indicating that those were anything but temporary conditions or that they otherwise constitute physical or mental impairments that substantially limit one or more major life activities." *Id.*

9

Mr. Skerce argues that under the ADAAA "[n]either claims of an actual disability nor a record of a disability require a Plaintiff to show that the impairment was more than 'temporary,'" Aplt. Opening Br. at 21, and "courts have held in post-ADAAA cases that temporary injuries may qualify as disabilities," *id.* at 22 (internal quotation marks omitted). We agree.

In *Adair v. City of Muskogee*, 823 F.3d 1297, 1304 (10th Cir. 2016), we explained that the parties and the district court had failed to analyze the plaintiff's disability discrimination claim under the governing version of the ADA—"[i]nstead of relying on the ADAAA, they relied on the ADA." The same is true for the district court in this case—it failed to analyze Mr. Skerce's claim under the ADAAA.

In amending the ADA in 2008, Congress abrogated two Supreme Court decisions because, in Congress's view, those cases "had improperly narrowed the broad scope of protection intended to be afforded by the ADA, thus eliminating protection for many individuals whom Congress intended to protect." *Id.* at 1305 (internal quotation marks omitted). "To reverse course, Congress passed the ADAAA with the stated goal of ensuring that the definition of disability be construed in favor of broad coverage." *Id.* (alteration, ellipsis, and internal quotation marks omitted).

Although the district court did not consider Mr. Skerce's claim under the ADAAA, it correctly determined Mr. Skerce cannot proceed on a claim that he is regarded as disabled if he has a temporary impairment lasting six months or less. A "regarded as" claim requires him to show "that [the] impairment is neither transitory

10

nor minor," *id.* at 1306. "A transitory impairment is an impairment with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B). But the new regulations explain that "[t]he six-month 'transitory' part of the 'transitory and minor' exception to 'regarded as' coverage . . . does not apply to the definition of 'disability' under . . . the 'actual disability' prong . . . or . . . the 'record of' prong . . . ." 29 C.F.R. § 1630.2(j)(ix). Instead, "[t]he effects of an impairment *lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section.*" *Id.* (emphasis added). And three decisions of our sister circuits—two published and one unpublished— have held that temporary conditions may meet the definition of a disability for the "actual disability" and "record of" prongs under the ADAAA. *See Mancini v. City of Providence ex rel. Lombardi*, 909 F.3d 32, 40-41 (1st Cir. 2018); *Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 168-69 (3d Cir. 2015); *Summers v. Altarum Institute, Corp.,* 740 F.3d at 329-30 (4th Cir. 2014).

Here, the record reflects that Mr. Skerce's elbow injury prevented him from working his regular duty as an electrician for almost three months and he was limited to lifting ten pounds for at least two months. He asserted in district court, and continues to assert on appeal, that his elbow injury substantially limited his major life activities of performing manual tasks, lifting, and working. We also note the Appendix to the regulations gives an example of an impairment that would not last for more than six months but would still be substantially limiting under the "actual disability" and "record of" prongs. It states: "For example, . . . if an individual has a

11

back impairment that results in a 20-pound lifting restriction that lasts for several months, he is substantially limited in the major life activity of lifting . . . ." 29 C.F.R. § 1630.2(j)(1)(ix) (app.).

We conclude that the district court committed legal error when it failed to consider Mr. Skerce's elbow injury under the ADAAA and determined that the injury could not qualify as a disability because it was a temporary condition. We further conclude that the record will not permit us to affirm on the alternative ground that Mr. Skerce's elbow injury is not a physical impairment that substantially limits a major life activity. We therefore reverse and remand to the district court to analyze Mr. Skerce's ADAAA discrimination claim based on his elbow injury under the *McDonnell Douglas* framework.

We reach the opposite conclusion with respect to Mr. Skerce's other health conditions. Even when considering these conditions under the ADAAA, none of them qualify as disabilities under any of the statutory definitions. We therefore affirm the district court's grant of summary judgment on Mr. Skerce's disability discrimination claims based on those conditions.

2. Failure to Accommodate

Mr. Skerce argues that the district court erred when it only analyzed his failure to accommodate claim with respect to his diabetes. We agree that the district court should have also analyzed this claim with respect to his elbow injury, but we conclude there is no reversible error because Mr. Skerce concedes that "Torgeson provided leave and light duty to Skerce for several months following his elbow

12

injury," and that "[s]uch leave was a reasonable accommodation under the ADAAA." Aplt. Opening Br. at 28.

3. Retaliation

The *McDonnell Douglas* burden-shifting framework also applies to Mr. Skerce's ADAAA retaliation claim. *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1209 (10th Cir. 2018).[4] "To make out a prima facie case, a plaintiff must demonstrate that (1) he engaged in protected opposition to discrimination; (2) a reasonable employee would have found his employer's subsequent action to be materially adverse; and (3) a causal connection exists between his protected activity and the employer's action." *Id.* (brackets and internal quotation marks omitted). A request for a reasonable accommodation "constitutes a protected activity for purposes of advancing an ADA retaliation claim." *Id.*

The district court determined that it was not clear whether Mr. Skerce engaged in any protected activity, but to the extent he premised his retaliation claim on any request for a reasonable accommodation, he did not request a reasonable accommodation with respect to his diabetes (the only qualifying disability the district court found). The district court failed to consider this claim with respect to Mr. Skerce's elbow injury. Mr. Skerce asserts that he received a reasonable

---

[4] "The ADAAA primarily effected revisions to the ADA's definition of 'disability' and "[t]hose revisions are not material" to the resolution of Mr. Skerce's retaliation claim. *Dewitt*, 845 F.3d at 1303 n.1. Although we refer to his retaliation claim as alleging a violation of the ADAAA, we rely on authorities that apply and construe the ADA, insofar as they are relevant. *See id.*

accommodation for that injury when he was given light duty and he argues that, contrary to the district court's finding, he did satisfy the elements for a prima facie case of ADAAA retaliation. He contends he engaged in protected activity, he was terminated, and a causal connection exists between his protected activity and his termination—he was terminated within two days of being released to full duty following his elbow injury. We decline to consider whether Mr. Skerce has established his prima facie case as that is for the district court to consider in the first instance. We agree, however, that the court erred in not considering this retaliation claim based on Mr. Skerce's elbow injury, so we reverse and remand for the court to consider it.

### D. FMLA claims

#### 1. Interference claim

As noted above, the jury found Torgeson interfered with Mr. Skerce's FMLA rights, but that its conduct was not willful. The jury also found Torgeson would have discharged Mr. Skerce regardless of his eligibility for FMLA leave. Mr. Skerce argues the jury's finding on willfulness was against the weight of the evidence.

To show willfulness, "a plaintiff must demonstrate that his employer knew or showed reckless disregard for whether its conduct was prohibited by the FMLA." *Bass v. Potter*, 522 F.3d 1098, 1104 (10th Cir. 2008) (internal quotation marks omitted). Willful conduct "is generally understood to refer to conduct that is *not merely negligent*." *Id.* at 1103 (internal quotation marks omitted). And "[e]ven if an

14

employer acts unreasonably, but not recklessly, in determining its legal obligation . . . its conduct is not willful." *Id.* (brackets and internal quotation marks omitted)

Mr. Skerce asserts that "Torgeson [knowingly] and with reckless disregard violated Skerce's rights under the FMLA by failing to designate his leave for a serious medical condition [(his elbow injury)] as FMLA, failing to give him notice of his rights and [terminating him] within 2 (two) days of his release to return to work." Aplt. Opening Br. at 33. In support of this argument, Mr. Skerce asserts that "Torgeson purposefully did not provide FMLA notice to any employee who suffered a serious [medical] condition due to an injury that occurred at work." *Id.*

Torgeson's corporate representative, Eric Duncan, testified at trial that if someone was covered under a workers' compensation claim, the company would hold back the FMLA leave and not run it concurrently because the company felt the workers' compensation claim adequately covered the employee and the employee received compensation the entire time. He said that when an employee suffered a workplace injury, the company didn't think about the FMLA; in contrast, if someone reported a serious medical condition that was not related to a workers' compensation claim, then the company would assess whether the employee was covered under the FMLA. Mr. Skerce was covered by a workers' compensation claim during the time he was also eligible for unpaid FMLA leave. Either Torgeson or the workers' compensation insurer paid him during the time he was unable to work his regular duty at Torgeson. Mr. Duncan further testified that even if Mr. Skerce's leave had been designated as FMLA leave, it would not have protected his job because

15

Torgeson did not have work available for him and he would have been laid off anyway.

Viewing the evidence in the light most favorable to Torgeson, its failure to notify Mr. Skerce that he was eligible for FMLA leave or to run his unpaid FMLA leave concurrently with his paid workers' compensation time could be viewed as mere negligence or an unreasonable determination of its obligations under the FMLA rather than a reckless disregard for Mr. Skerce's FMLA rights. The evidence therefore supports the jury's finding that Torgeson interfered with Mr. Skerce's FMLA rights, but that its interference was not willful. The evidence also supports the jury's finding that Torgeson would have terminated Mr. Skerce regardless of his eligibility for FMLA leave. Mr. Skerce has failed to show that "the evidence points but one way and is not susceptible to any reasonable inferences supporting the verdict." *Zia Shadows*, 829 F.3d at 1247 (internal quotation marks omitted). We therefore affirm the jury's verdict on his FMLA interference claim.

2. Retaliation claim

Mr. Skerce alleged Torgeson unlawfully retaliated against him in violation of the FMLA by terminating him after he took leave from January 2015 to April 2015. FMLA retaliation claims are subject to the *McDonnell Douglas* burden-shifting analysis. *See Dewitt*, 845 F.3d at 1318. And the first element of the prima facie case is that the employee engaged in a protected activity. *See id.* The district court concluded Mr. Skerce could not establish a prima facie case of retaliation because he had not engaged in any protected activity under the FMLA—he neither requested

16

FMLA leave nor availed himself of any FMLA rights or benefits. Mr. Skerce argues he engaged in a protected activity when he took leave from his job due to his elbow injury. But it is undisputed that Mr. Skerce never submitted a request for FMLA leave and that Torgeson did not designate the leave for his elbow injury as FMLA leave. He has not pointed to any legal authority to support the proposition that he engaged in protected activity under the FMLA given these factual circumstances. The district court therefore did not err in granting summary judgment on this claim.

III. Conclusion

For the foregoing reasons, we affirm the district court's judgment, except for the court's decision to grant summary judgment on the ADAAA disability and retaliation claims based on Mr. Skerce's elbow injury. We reverse the court's judgment on those claims and remand for further proceedings consistent with this decision.

Entered for the Court

Jerome A. Holmes
Circuit Judge

17