Hopkins v. MWR Mgmt. Co., 2016 NCBC 38.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

BRANDON HOPKINS,

        Plaintiff,

v.

MWR MANAGEMENT COMPANY d/b/a
MICHAEL WALTRIP RACING and TY
NORRIS,

        Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 697

**ORDER & OPINION ON DEFENDANT
MWR'S PARTIAL MOTION TO
DISMISS SECOND AMENDED
COMPLAINT**

{1}    **THIS MATTER** is before the Court upon Defendant MWR Management Company's ("Defendant" or "MWR") Partial Motion to Dismiss Plaintiff Brandon Hopkins' ("Plaintiff" or "Hopkins") Second Amended Complaint (the "Motion to Dismiss" or the "Motion").[1]

{2}    The Court, having considered the Motion, the briefs supporting and opposing the Motion, and the arguments of counsel at a February 2, 2016 hearing on the Motion, hereby **GRANTS in part** and **DENIES in part** the Motion to Dismiss.

*Van Kampen Law, PC, by Joshua R. Van Kampen and Sean F. Herrmann, for Plaintiff Brandon Hopkins.*

*James, McElroy & Diehl, P.A., by William K. Diehl, Jr., Jon P. Carroll, and Adam L. Ross, for Defendants MWR Management Company and Ty Norris.*

Bledsoe, Judge.

I.

PROCEDURAL BACKGROUND

{3}    Hopkins commenced this action on January 12, 2015, asserting various claims arising out of MWR's termination of Hopkins' employment on August 6, 2014. Hopkins' claims center around his allegation that MWR terminated him for seeking

---

[1] Although the Motion is titled "Defendants' Partial Motion to Dismiss the Second Amended Complaint," suggesting that both Defendants are moving parties, the body of the Motion states that MWR is the sole moving party, and the claims sought to be dismissed are asserted against only MWR.

surgery to repair a shoulder injury Hopkins suffered during the course of his employment. Hopkins amended his complaint with Defendants' consent on May 26, 2015. Defendants subsequently filed their answer, and MWR filed a Motion to Dismiss, on July 15, 2015, and Hopkins filed a Motion to Amend to assert a second amended complaint on September 15, 2015.

{4} On November 5, 2015, the Court granted Hopkins' Motion to Amend and at the same time dismissed Hopkins' claim for wrongful discharge based on an alleged violation of the North Carolina Persons with Disabilities Protection Act, N.C. Gen. Stat. 168A-1, *et seq.* ("NCPDPA"). *See Hopkins I v. MWR Mgmt. Co.*, 2015 NCBC LEXIS 104 (N.C. Super. Ct. Nov. 5, 2015) ("*Hopkins I*" or the "November 5 Order"). In so ruling, the Court concluded that "Hopkins ha[d] not shown that he was a 'person with a disability' under the NCPDPA[.]" *Id.* at *19.

{5} Hopkins filed the Second Amended Complaint on November 10, 2015. The Second Amended Complaint contains factual allegations nearly identical to those in the Amended Complaint and, based on those same allegations, adds claims against MWR under the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA").

{6} On December 2, 2015, MWR filed the current Motion to Dismiss, seeking the dismissal of Hopkins' newly-added ADA and FMLA claims. The Motion has been fully briefed, and the Court held a hearing on the Motion on February 2, 2016, at which all parties were represented by counsel. The Motion is ripe for resolution.

II.

FACTUAL BACKGROUND

{7} The Court does not make findings of fact when ruling on a motion to dismiss pursuant to Rule 12(b)(6) because such a motion "does not present the merits, but only whether the merits may be reached." *Concrete Serv. Corp. v. Investors Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986).

{8} The relevant factual and procedural background of this case is recited in detail in *Hopkins I*, 2015 NCBC LEXIS 104, at *2–7, which the Court incorporates herein by reference.

III.

ANALYSIS

A. <u>Standard of Review</u>

{9}     When ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court asks "whether the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Enoch v. Inman*, 164 N.C. App. 415, 417, 596 S.E.2d 361, 363 (2004). Thus, courts generally construe complaints liberally and accept all allegations as true, but a "trial court can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009). Dismissal of a claim on a Rule 12(b)(6) motion is proper "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; (3) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985) (citations omitted).

B. <u>Americans with Disabilities Act</u>

{10}    The ADA, 42 U.S.C. § 12101, *et seq.*, prohibits covered entities, including private employers, from discriminating against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id.* § 12112(a). The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." *Id.* § 12102(1). A "qualified individual" with a disability under the ADA is someone "who, with or without reasonable accommodation, can perform the essential functions" of the job. *Id.* § 12111(8). A reasonable accommodation "is one that 'enables [a qualified] individual with a disability . . . to perform the essential functions of [a] position,'" and an employer has a good-faith duty to engage with its employee

to identify a reasonable accommodation. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 580–81 (4th Cir. 2015) (alterations in original) (quoting 29 C.F.R. § 1630.2(o)(1)(ii)) (internal punctuation omitted).

{11} "To establish a claim for disability discrimination under the ADA, a plaintiff must prove '(1) that she has a disability, (2) that she is a "qualified individual" for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability.'" *Id.* at 572 (alteration in original) (quoting *EEOC v. Stowe-Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000)). To demonstrate one's status as a "qualified individual with a disability" under the ADA, an individual may offer: "1) proof that the individual is 'actually disabled,' and that such disability 'substantially limits one or more major life activities'; 2) proof that the individual has a record of such impairment; or 3) proof that the individual is 'regarded as having such an impairment.'" *West v. J.O. Stevenson, Inc.*, No. 7:15-CV-87-FL, 2016 U.S. Dist. LEXIS 22526, at *41 (E.D.N.C. Feb. 24, 2016) (quoting 42 U.S.C. § 12102(1)).

{12} Hopkins alleges in his Second Amended Complaint that he was a "qualified individual with a disability" under the ADA and that MWR violated the ADA by (i) "treating Plaintiff differently from his peers in terms and conditions of employment and ultimately terminating him on the basis of his actual or perceived disability"; (ii) "denying Plaintiff a requested reasonable accommodation, his shoulder surgery and leave"; and (iii) "retaliating against Plaintiff for exercising his statutory right to request a reasonable accommodation." (Second Am. Compl. ¶¶ 93–94.)

{13} MWR first contends that the Court's conclusion in the November 5 Order that Hopkins failed to show that he was a "person with a disability" under the NCPDPA, *Hopkins I*, 2015 NCBC LEXIS 104, at *19, compels the further conclusion that Hopkins is not a "qualified person with a disability" under the ADA, therefore mandating dismissal.

{14} As the Court discussed in the November 5 Order, "a 'person with a disability' under the NCPDPA is anyone who '(i) has a physical or mental impairment which substantially limits one or more major life activities; (ii) has a record of such an

impairment; or (iii) is regarded as having such an impairment.'" *Hopkins I*, 2015 NCBC LEXIS 104, at *13 (quoting N.C. Gen. Stat. § 168A-3(7a) (2014)). "Physical or mental impairment" encompasses a comprehensive list of disorders or conditions, but the statute excludes conditions that are "temporary in nature, lasting six months or fewer, and leaving no residual impairment." N.C. Gen. Stat. § 168A-3(7a)(a). "Major life activities" under the NCPDPA include a variety of life functions, such as "sleeping, lifting, bending, . . . and working." *Id.* § 168A-3(7a)(b). In addition, a person is "regarded as having an impairment" and therefore is a "person with a disability" under the NCPDPA when he (i) "has a physical or mental impairment that does not substantially limit major life activities but that is treated as constituting such a limitation" or (ii) has no such impairment limiting a major life activity "but is treated as having such an impairment." *Id.* § 168A-3(7a)(d).

{15} Hopkins previously argued that he qualified as a "person with a disability" under either the first prong (actual disability) or third prong (perceived disability) of the statutory definition under the NCPDPA, but the Court disagreed. As to the first prong, the Court concluded that the facts as pleaded did not support Hopkins' allegations that the alleged impairment lasted more than six months as required under the NCPDPA.[2] The Court further found that the facts as alleged did not show that Hopkins' alleged disability had substantially limited one or more of his major life activities—in particular, as pleaded here, the major life activities of sleeping and lifting. *See Hopkins I*, 2015 NCBC LEXIS 104, at *14–17. As to the third prong, the Court concluded that "[f]airly read, the Amended Complaint indicates that MWR

---

[2] The Court specifically found as follows in the November 5 Order:

> Hopkins had surgery on August 7, 2014, and achieved a full recovery in less than three months when his doctor cleared him to return to work with no restrictions on October 28, 2014. (Am. Compl. ¶ 41.) The injury's impact on his ability to sleep or participate in team workouts did not begin until June 2014, which is fewer than six months before his full recovery. (Am. Compl. ¶¶ 21–23.) Thus, any effect of the injury lasting more than six months was a result of the decision to delay surgery rather than the nature of the injury itself.

*Hopkins I*, 2015 NCBC LEXIS 104, at *32.

knew of the injury but considered Hopkins a capable worker between the time he was injured and his surgery" and does not "permit an inference that MWR treated him as suffering an impairment that was not temporary and substantially limited his major life activities." *Id.* at \*18.

{16}   The Court has previously observed that "[t]he NCPDPA is the North Carolina equivalent of the ADA." *Id.* at \*15 n.2 (citing *Johnson v. Bd. Of Trs. of Durham Tech. Cmty. Coll.*, 157 N.C. App. 38, 46, 577 S.E.2d 670, 674 (2003)).  While the NCPDPA and the ADA are substantially similar, the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (the "ADAAA"), reinstated a more inclusive scope of protection by mandating that the definition of disability "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by [its] terms."   42 U.S.C. § 12102(4)(A) (2012); *see also Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 329 (4th Cir. 2014) (discussing the ADAAA and its legislative history).  The NCPDPA was amended after the ADAAA became law, but North Carolina's definition of "a person with a disability" still excludes temporary conditions and did not add a mandate for broad coverage similar to the ADAAA's mandate. *See* 2011 N.C. Sess. Laws 94.

(i)  Actual Disability

{17}   Turning first to Plaintiff's claim of "actual disability," Plaintiff argues that he has pleaded facts establishing that he had "a physical impairment that substantially limits one or more major life activities" under the ADA.  Unlike the NCPDPA, the regulations implementing the ADA provide that the term "'[s]ubstantially limits' is not meant to be a demanding standard," 29 C.F.R. § 1630.2(j)(1)(i).  Indeed, the regulations state that "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."  *Id.* § 1630.2(j)(1)(ii).  Moreover, in contrast to the NCPDPA, the ADA does not contain a requirement that an impairment last longer than six months to qualify for coverage.  *See id.* §

1630.2(j)(1)(ix).[3] Also unlike the NCPDPA, the ADA specifically includes as a "major life activity" "[t]he operation of a major bodily function," including, the "musculoskeletal . . . function[]." *Id.* § 1630.2(i)(1)(ii).

{18} In cases brought under the ADA, as amended by the ADAAA, "[t]he primary object of attention . . . should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability." *Jacobs*, 780 F.3d at 572 (quoting 29 C.F.R. § 1630.1(c)(4)). "The question of whether an individual meets the definition of disability under this part should not demand extensive analysis." 29 C.F.R. § 1630.1(c)(4). At the pleading stage under the Federal Rules, a plaintiff asserting claims under the ADA is "not required . . . to go into particulars about the life activity affected by [the] alleged disability or detail the nature of [the] substantial limitations." *Mary's House, Inc. v. N.C.*, 976 F. Supp. 2d 691, 702 (M.D.N.C. 2013) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)).

{19} In this case, Plaintiff has pleaded that he suffered a torn labrum on October 6, 2013, (Second Am. Compl. ¶¶ 15, 19), and contends that he has pleaded facts showing that this impairment substantially limited "his ability to sleep," his ability to "lift[], reach[], and perform[] manual tasks," and his "musculoskeletal system's function." (Pl. Mem. Supp. Mot. Dismiss 11; Second Am. Compl. ¶ 91.) Plaintiff alleges that he underwent surgery to repair his injury on August 7, 2014, (Second Am. Compl. ¶ 26), and was cleared to return to work with no restrictions on October 28, 2014. (Second Am. Compl. ¶ 42.)

{20} The Court previously concluded that Plaintiff had failed to plead facts permitting a conclusion that Plaintiff was substantially limited in his ability to sleep

---

[3] For example, 29 C.F.R. § 1630.2(j)(1)(ix) provides:

> The six-month "transitory" part of the "transitory and minor" exception to "regarded as" coverage in § 1630.15(f) does not apply to the definition of "disability" under paragraphs (g)(1)(i) (the "actual disability" prong) or (g)(1)(ii) (the "record of" prong) of this section. The effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section.

or lift for purposes of the NCPDPA. As to Plaintiff's alleged inability to sleep, the Court relied upon federal decisions under the ADA but not the ADAAA and held as follows:

> At the hearing, Hopkins directed the Court's attention to his allegations regarding substantial impairment of his ability to sleep and lift. However, the Amended Complaint only alleges that Hopkins told his pit coach that his shoulder pain "affected his ability to sleep" in early June 2014. (Am. Compl. ¶ 21.) Without more, this statement does not give rise to an inference that Hopkins was "substantially limited" in his ability to sleep. *See Anderson v. Discovery Commc'ns*, 517 Fed. Appx. 190, 194–95 (4th Cir. 2013) (holding that a plaintiff who alleged receiving less than four hours of sleep nightly on account of insomnia was not substantially limited in a major life activity under the ADA); *Boerst v. Gen. Mills Operations*, 25 Fed. Appx. 403, 407 (6th Cir. 2002) ("Getting between two and four hours of sleep a night, while inconvenient, simply lacks the kind of severity we require of an ailment before we will say that the ailment qualifies as a substantial limitation under the ADA.").

*Hopkins I*, 2015 NCBC LEXIS 104, at *14–15.

{21} As to Plaintiff's alleged inability to lift, the Court held:

> Hopkins asserts that he continued to work through the summer of 2014, although he "was unable to work out and could only partially participate in pit practice" as he was "trying to save his shoulder for the beating it would take on race day." (Am. Compl. ¶ 23.) Hopkins' inability to participate in team workouts while continuing to perform the other aspects of his job does not indicate that he was substantially limited in the major life activities of lifting or working. *See Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 152–53 (4th Cir. 2012) (holding that the plaintiff was not substantially limited in his ability to lift under the ADA where his alleged injuries did not restrict him from doing activities of central importance to most people's daily lives) [4]; *Gravitte v. Mitsubishi Semiconductor Am., Inc.*, 109 N.C. App. 466, 471, 428 S.E.2d 254, 257, disc. rev. denied, 334 N.C. 163, 432 S.E.2d 360 (1993) (stating that "plaintiff's condition must limit more than her mere ability to work a particular job in order for it to affect a major life activity"). Taken as true, Hopkins' pleadings indicate that he could, in fact, perform most of his job duties but chose to exert himself sparingly. *See Clark v. United Emergency Servs.*, No. COA07-592, 2008 N.C. App. LEXIS 660, *22–23

---

[4] In *Reynolds*, the Fourth Circuit joined other federal circuit courts of appeals in holding that the ADAAA, which took effect on January 1, 2009, does not apply retroactively. 701 F.3d at 151–52. *Hopkins I* cited a number of federal cases that were decided after January 1, 2009 but did not apply the ADAAA because the conduct underlying the ADA claims occurred prior to 2009.

> (N.C. Ct. App. Apr. 15, 2008) (unpublished) (holding that plaintiff failed to state a claim under the NCPDPA when she could perform her job duties at times when she was not receiving treatments for a blood disorder).

*Hopkins I*, 2015 NCBC LEXIS 104, at *16–17 (footnote added).

{22} Impairments lasting for fewer than six months are excluded from the statutory definition of "disability" under the NCPDPA, which reflects interpretations of the ADA prior to the 2008 amendments. *See Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002) (holding that an impairment only rises to the level of a disability under the ADA if its impact is "permanent or long term"). The 2008 amendments to the ADA and the accompanying regulations took a more inclusive view that "effects of an impairment lasting or expected to last fewer than six months *can be substantially limiting* . . . ." 29 C.F.R. § 1630.2(j)(1)(ix) (emphasis added). In promulgating these regulations, the EEOC has offered guidance on how to consider an impairment's duration. "Impairments that last only for a short period of time are typically not covered, although they may be covered if sufficiently severe." 29 C.F.R. § 1630.2(j)(i)(ix) (app.). Courts should view duration as merely "one factor that is relevant in determining whether the impairment substantially limits a major life activity." *Id.* As an example of a sufficiently severe temporary impairment, the Fourth Circuit has embraced the EEOC's view that an individual with a back impairment that results in a twenty pound lifting restriction lasting for several months is substantially limited in the major life activity of lifting. *Summers*, 740 F.3d at 330 (relying on 29 C.F.R. § 1630.2(j)(i)(ix) (app.)).

{23} First, as to sleep, Plaintiff alleges only that he told his pit coach that his shoulder pain "affected his ability to sleep" on a single occasion in early June 2014. (Second Am. Compl. ¶ 22.) Plaintiff does not allege any facts showing that he was actually unable to sleep as a result of his injury. Moreover, he has not pleaded any facts indicating the degree or severity of any alleged inability to sleep, including how frequently he suffered from his alleged inability to sleep, how severely his nightly sleep was disrupted when his ability to sleep was affected, or the length of time he

suffered from his alleged inability to sleep.[5] Based on the facts pleaded here—simply that Plaintiff told his pit coach on a single occasion that his injury had "affected his ability to sleep"—the Court concludes that Plaintiff has failed to plead facts from which a permissible inference may be drawn that he was substantially limited in his ability to sleep as a result of his alleged disability. *See, e.g., West*, 2016 U.S. Dist. LEXIS 22526, at \*43 ("Where plaintiff has failed to plead the expected duration of his impairment, as well as its severity, the court cannot determine its effect on any major life activity."); *Estate of Murray v. UHS of Fairmount, Inc.*, No. 10-2561, 2011 U.S. Dist. LEXIS 130199, at \*26 (E.D. Pa. Nov. 9, 2011) (holding that plaintiff was not substantially limited in the major life activity of sleeping where her evidence "boil[ed] down to a brief mention . . . of not eating, not sleeping, and having racing thoughts without any details as to duration, frequency, or severity"); *but see Summers*, 740 F.3d at 330 (holding that plaintiff's temporary impairment was sufficiently severe to survive a 12(b)(6) motion where plaintiff alleged that his broken legs and injured tendons rendered him immobile for seven months).

{24} Next, as to lifting, reaching and performing manual tasks, Plaintiff alleges that he continued to work through the summer of 2014, although he "was unable to work out and could only partially participate in pit practice" as he was "trying to save his shoulder for the beating it would take on race day." (Second Am. Compl. ¶ 24.) The Court previously concluded that "Hopkins' pleadings indicate that he could, in fact, perform most of his job duties but chose to exert himself sparingly," and that any impairment was temporary in nature and not so severe that he was substantially limited in lifting, reaching, and other manual tasks. *Hopkins I*, 2015 NCBC LEXIS 104, at \*16–17. In reaching this conclusion, the Court relied on North Carolina case law and analogous pre-ADAAA federal case law, which, as explained above, place a stricter burden on plaintiffs to allege disability at the pleadings stage. *See supra* ¶ 16.

---

[5] As pleaded, Plaintiff's inability to sleep did not begin until June 2014 and, at most, ended no later than his release to return to work on October 28, 2014, a period of no more than four months. (Second Am. Compl. ¶¶ 21–23.)

{25}   Construing the ADA in favor of broad coverage and to the maximum extent permitted by its terms, as the Court is required to do under the ADAAA, the Court cannot determine that Hopkins has failed to plead sufficiently that he was substantially limited in his ability to reach, lift, and perform manual tasks.  Plaintiff has at least alleged non-conclusory facts that his impairment limited his ability to lift, reach, and perform manual tasks, which the Court determines is sufficient under the ADAAA to survive a motion to dismiss. *See generally Mary's House*, 976 F. Supp. 2d at 702 (holding that plaintiffs' allegations that they were recovering addicts and previously homeless was sufficient at the 12(b)(6) stage to support an inference that they were substantially limited in their ability to work and care for themselves); *Bray v. Town of Wake Forest*, No. 5:14-CV-276-FL, 2015 U.S. Dist. LEXIS 44731, at *27–28 (E.D.N.C. Apr. 3, 2015) (holding that plaintiff who alleged she could not lift, run, and jump while pregnant sufficiently pleaded disability despite pre-ADAAA precedent that pregnancy alone is not a disability for the purposes of the ADA); *see also Rico v. Xcel Energy, Inc.*, 893 F. Supp. 2d 1165, 1168 (D.N.M. 2012) ("[I]n light of the new standards outlined in the ADAAA and its implementing regulations, courts have declined to dismiss, under Rule 12(b)(6), ADA claims for failure to allege facts that, if proven, would establish an impairment that 'substantially limits' a major life activity").  While proof of more detailed facts may be needed to survive a motion for summary judgment, Plaintiff's allegations are sufficient at this stage to support an inference that he was substantially limited in his ability to lift, reach, and perform manual tasks.

{26}   Last, Plaintiff alleges that he suffered a torn labrum, which substantially limited his "musculoskeletal system's function" and thus constituted a disability under the ADA.  According to the Orthopaedic Surgery section of the John Hopkins Medicine website, "[t]he labrum is a piece of fibrocartilage (rubbery tissue) attached to the rim of the shoulder socket that helps keep the ball of the joint in place. When this cartilage is torn, it is called a labral tear."[6]  Fibrocartilage is "a type of cartilage

---

[6] *See* John Hopkins Medicine, Orthopaedic Surgery, http://www.hopkinsmedicine.org/orthopaedic-surgery/specialty-areas/sports-medicine/conditions-we-treat/labral-tear-shoulder.html.

having a large number of fibers,"[7] and "[c]artilage is a type of connective tissue in the body that has a tough, flexible matrix made of collagen, protein, and sugar."[8] "Cartilage is found in the nose and ears, as well as joints, including the knees, hips, shoulders, and fingers,"[9] and "[t]he skeletal system includes the bones of the skeleton and the *cartilages*, ligaments, and other connective tissue that stabilize or connect the bones."[10] Defendants do not argue that the labrum is not part of the body's musculoskeletal system, and so the Court accepts as true Plaintiff's allegation that his torn labrum affected his body's musculoskeletal system.

{27} In contrast to the other alleged major life activities Plaintiff contends were substantially limited by his alleged disability, Plaintiff has advanced a number of allegations suggesting that his torn labrum substantially restricted the operation of his musculoskeletal function, including numerous allegations asserting that Plaintiff suffered intense pain in his shoulder and neck for several months and lost feeling in his arm and hand from time to time. (Second Am. Compl. ¶¶ 16–26.) As a result, the Court concludes that, as pleaded here, Plaintiff's impairment, although temporary, is alleged to have been sufficiently severe to "substantially limit" the operation of his musculoskeletal function under the expansive definition of that term under the 2008 Amendments to the ADA. *E.g.,* 29 C.F.R. 1630.2(j)(1) ("'Substantially limits' is not meant to be a demanding standard."). *See also Summers*, 740 F.3d at 332 (stating that torn tendons are impairments to the musculoskeletal system); *Moore v. Jackson Cnty. Bd. Of Educ.*, 979 F. Supp. 2d 1251, 1261 (N.D. Ala. 2013) (holding that plaintiff's broken ankle substantially limited her general musculoskeletal function).[11]

---

[7] *See* Dictionary.com, http://www.dictionary.com/browse/fibrocartilage.

[8] *See* Univ. of Md. Med. Ctr., http://umm.edu/health/medical/altmed/supplement/cartilage.

[9] *Id.*

[10] *See* Cleveland Clinic, Diseases & Conditions, https://my.clevelandclinic.org/health/diseases_ conditions/hic_musculoskeletal_pain/hic_Normal_Structure_and_Function_of_the_Musculoskeletal_ System (emphasis added).

[11] "The link between particular impairments and various major bodily functions should not be difficult to identify. Because impairments, by definition, affect the functioning of body systems, they will

The Court thus concludes that Plaintiff may maintain his claim for "actual disability" under the ADA at this stage of the litigation based on his contention that his alleged impairment substantially limited the operation of his musculoskeletal function.

(ii) Regarded As

{28} Chief Judge Flanagan recently summarized the elements of a "regarded as" claim under the 2008 Amendments to the ADA:

> The elements of an ADAAA claim brought under the "regarded as" prong essentially are the same as those elements necessary to state a claim under the ADAAA's "actually disabled" prong. *See Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150, 153 (4th Cir. 2012). The only difference between the two claims is the nature of proof required to demonstrate that the plaintiff is a "qualified individual with a disability." Under the "regarded as" prong, individuals who are "regarded as having" a physical or mental impairment that substantially limits one or more of their major life activities are protected by the ADAAA. *See* 42 U.S.C. § 12102(1)(A) & (C). To be "regarded as" having such an impairment, the plaintiff must demonstrate that he suffers from "an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." [*Id.*] § 12102(3)(A). Thus, unlike the "actually disabled" prong, which requires proof that an impairment substantially limits a major life activity, to plead a successful claim under the "regarded as" prong, a plaintiff need only show that he suffers from an impairment, whether or not that impairment actual[ly] affects him or is only perceived by his employer and regardless of whether that impairment substantially limits any major life activity. *See id.*; *see also* 29 C.F.R. § 1630.2(l)(1)[.]

*West,* 2016 U.S. Dist. LEXIS 22526, at *44–45.

{29} In concluding that Plaintiff had failed to plead facts alleging that MWR regarded him as disabled under the NCPDPA, the Court observed that "Hopkins himself asserts that even while injured he was 'probably in the top 10-15%' of front tire changers in the Sprint Cup and that MWR did not identify any deficiency in his job performance when they terminated him." *Hopkins I*, 2015 NCBC LEXIS 104, at *18. The Court also determined that "[f]airly read, the Amended Complaint indicates

---

generally affect major bodily functions. For example . . . rheumatoid arthritis affects musculoskeletal functions." 29 C.F.R. § 1630.2(i) (app.)

that MWR knew of the injury but considered Hopkins a capable worker between the time he was injured and his surgery." *Id.* The Court finally concluded that "Hopkins' efforts to 'suck[] it up' and 'work through the pain,' . . . [did] not permit an inference that MWR treated him as suffering an impairment that was not temporary and substantially limited his major life activities" under the NCPDPA. In advancing his "regarded as" claim under the ADA, Plaintiff relies on these same identical facts. (Second Am. Compl. ¶¶ 39, 21.)

{30} Under the ADAAA, however, Plaintiff needs not meet the same pleading standard as under the NCPDPA. A plaintiff has sufficiently pleaded that he was "regarded as" disabled under the ADA where "1) he is actually impaired and such impairment is known to his employer or 2) his employer perceives him to be impaired." *West*, 2016 U.S. Dist. LEXIS 22526, at *49. In defining "regarded as," the statute specifically uses the word "impaired" rather than "disabled," meaning a plaintiff no longer must prove that he was regarded as having a substantially limiting impairment. *Id.* at *48–49; *see also Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 606 (E.D.N.Y. 2013).

{31} Plaintiff has, under this more lenient standard, alleged that he was impaired by his shoulder injury and that his employer knew of the impairment. While the Court concluded in *Hopkins I* that Plaintiff had not alleged that he was terminated because MWR perceived him as *disabled*—as defined in the NCPDPA— Plaintiff has alleged here that MWR terminated him shortly after he notified his employer that he could not complete the race season on account of his shoulder injury. (Second Am. Compl. ¶¶ 25–26.) Therefore, Plaintiff has alleged that he was "regarded as" disabled under 42 U.S.C. § 12102(1)(C).[12]

---

[12] The exception for "transitory and minor" impairments lasting six months or less still remains for the "regarded as" prong. 42 U.S.C. § 12102(3)(B). The Court in *Hopkins I* determined that, based on the time at which Plaintiff's ability to sleep and work out were allegedly impaired, "any effect of the injury lasting more than six months was the result of the decision to delay surgery rather than the nature of the injury itself." *Hopkins I*, 2015 NCBC LEXIS 104, at *14. In light of the ADAAA's mandate for broad coverage, however, the Court will permit Plaintiff's "regarded as" claim to proceed and address the evidence concerning whether Plaintiff's alleged impairments were "transitory" or "minor" at the summary judgment stage of this litigation.

(iii) <u>Reasonable Accommodation/Retaliation</u>

{32} MWR moved to dismiss Plaintiff's ADA claim on the basis of an "actual or perceived" disability and, other than on this ground, has not specifically moved to dismiss Plaintiff's ADA claim to the extent it is based on Plaintiff's contentions that MWR "den[ied] Plaintiff a requested reasonable accommodation, his shoulder surgery and leave" and "retaliate[d] against Plaintiff for exercising his statutory right to request a reasonable accommodation." (Second Am. Compl. ¶¶ 93–94.) Nonetheless, the Court briefly addresses these contentions in light of the Court's rulings on Plaintiff's claims for actual and perceived disability.

{33} The ADA's implementing regulations instruct that a

> covered entity is required, absent undue hardship, to provide a reasonable accommodation to an otherwise qualified individual who meets the definition of disability under the 'actual disability' prong (paragraph (g)(1)(i) of this section), or 'record of' prong (paragraph (g)(1)(ii) of this section), but is not required to provide a reasonable accommodation to an individual who meets the definition of disability solely under the 'regarded as' prong (paragraph (g)(1)(iii) of this section).

29 C.F.R. § 1630.2(o)(4)); *Chamberlain v. Securian Fin. Grp., Inc.*, No. 3:14-cv-00453-MOC-DCK, 2016 U.S. Dist. LEXIS 20353, at *49 (W.D.N.C. Feb. 19, 2016) ("the ADAAA, apparently in an attempt to resolve a circuit split, provides that accommodations need not be given to 'regarded as' employees"). Accordingly, because the Court has concluded that Plaintiff's claim for "actual disability" shall survive dismissal on this Motion, Plaintiff's reasonable accommodation claim should not be dismissed under Rule 12(b)(6).

{34} In addition, an ADA retaliation claim "leaves employers liable for terminating employees who are retaliated against for making a good-faith request for a reasonable accommodation," whether the employee's alleged disability is actual or perceived. *Saley v. Caney Fork, LLC*, 886 F. Supp. 2d 837, 855 (M.D. Tenn. 2012). As a result, Plaintiff's ADA retaliation claim should likewise survive Defendant's Motion.

C. Family Medical Leave Act

{35} The Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, grants employees the prescriptive right to take up "to a total of 12 workweeks of leave during any 12-month period" when, *inter alia*, an employee is burdened with "a serious health condition that makes the employee unable to perform" his job. 29 U.S.C. § 2612(a)(1).

{36} The FMLA makes clear that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's FMLA rights. 29 U.S.C. § 2615(a)(1). A violation of this section is frequently described as an "FMLA interference" claim. To make out an "FMLA interference" claim, an employee must demonstrate that (1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm. *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015) (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)).

{37} The FMLA further provides that it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 USCS § 2615(a)(2). A violation of this section is typically referred to as an "FMLA retaliation" claim. The Fourth Circuit has recognized that "because FMLA retaliation claims are analogous to Title VII retaliation claims, they can be analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06 (1973)." *Ranade v. BT Ams., Inc.*, 581 F. App'x 182, 183 (4th Cir. 2014) (citing *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001)). Thus, to plead an FMLA retaliation claim, an employee must allege facts showing "that []he engaged in protected activity, that [the employer] took adverse action against [him], and that the adverse action was causally connected to [the employee's] protected activity." *Mercer v. Arc of Prince Georges Cnty., Inc.*, 532 F. App'x. 392, 398 (4th Cir. 2013) (quoting *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998)).

{38} Plaintiff's FMLA claim here is premised on Plaintiff's allegation that "MWR repeatedly discouraged Plaintiff from taking his requested FMLA protected leave and

ultimately terminated him for these requests." (Second Am. Compl. ¶ 107.) Thus, it appears that Plaintiff's claim is for both discouraging Plaintiff from taking FMLA leave—an FMLA interference claim—and for terminating Plaintiff for requesting FMLA leave—an FMLA retaliation claim.

{39} Defendants move to dismiss Plaintiff's FMLA claim on the ground that Plaintiff has failed to allege compliance with MWR's usual notice and procedural requirements. More specifically, MWR argues that Plaintiff's failure to plead that he "requested medical leave under the FMLA pursuant to MWR's written policies as set forth in the Employee Manual," (Defs.' Mem. Supp. Mot. Dismiss 10), renders Plaintiff's claim fatally defective in light of 29 C.F.R. § 825.302(d), which permits an employer to delay or deny an FMLA leave request "[w]here an employee does not comply with the employer's usual notice and procedural requirements," and federal case law dismissing FMLA claims based on an employee's failure to comply with the employer's internal leave policies and procedures. *See, e.g., Righi v. SMC Corp. of Am.*, 632 F.3d 404, 411–12 (7th Cir. 2011) (holding that "an employee's failure to comply with his employer's internal leave policies and procedures is a sufficient ground for termination and forecloses an FMLA claim"); *Gibson v. Corning Inc.*, No. 5:14-CV-105-BO, 2015 U.S. Dist. LEXIS 48905, at *18–19 (E.D.N.C. Apr. 13, 2015) (dismissing plaintiff's FMLA claim where plaintiff did not comply with the employer's notification or certification requirements).

{40} Defendant's argument, however, seeks to require Plaintiff to plead facts to anticipate and defeat Defendants' expected defenses rather than to identify required elements omitted from Plaintiff's pleading. As noted above, an "FMLA interference" claim must allege that a plaintiff is entitled to an FMLA benefit, interference, and resulting harm. *Adams,* 789 F.3d at 427. Similarly, an "FMLA retaliation" claim must allege protected activity, adverse action, and a causal connection. *Mercer*, 532 F. App'x. at 398. Neither claim requires a plaintiff to specifically allege compliance with the employer's internal leave policies in order to state a valid claim for purposes of Rule 12(b)(6). *See, e.g., Findlay v. PHE, Inc.*, No. 1:98CV01068, 1999 U.S. Dist. LEXIS 9760, at *9 (M.D.N.C. Apr. 16, 1999) ("[C]ompliance with employer notice

procedures is not an element of an FMLA retaliation claim which must be specifically pleaded."); *Thomas v. Dolgencorp, LLC*, No. 1:13-cv-128-MHT-PWG, 2015 U.S. Dist. LEXIS 98167, at *10 (M.D. Ala. June 9, 2015) ("A defendant bears the burden of proof for an affirmative defense under the FMLA. This includes for the affirmative defense of lawful reasons for termination.") (citation omitted).

{41} Rather, a defendant may raise an employee's failure to comply with the defendant employer's policies and procedures as an affirmative defense against the plaintiff's claim. *See, e.g., Findlay*, 1999 U.S. Dist. LEXIS 9760 at *9–10. ("[F]ailure to meet [employer notice] requirements represents a merit-based defense to Plaintiff's contention that she engaged in protected activity and is appropriately raised at the summary judgment stage."). Indeed, the cases upon which Defendant relies, including *Righi* and *Gibson* cited above, were decided under Rule 56 after the development of a factual record, not under Rule 12 as a matter of pleading. *See generally, e.g., Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("[A] complaint need not anticipate or overcome affirmative defenses; thus, a complaint does not fail to state a claim simply because it omits facts that would defeat [an affirmative] defense."); *Levin v. Miller*, 763 F.3d 667, 671 (7th Cir. 2014) ("Complaints need not anticipate affirmative defenses . . . .").

{42} Although the North Carolina appellate courts have made clear that "dismissal under Rule 12(b)(6) on the grounds of [an] affirmative defense is proper if the complaint on its face reveals an "insurmountable bar" to recovery, *Johnson v. N.C. Dept. of Transp.*, 107 N.C. App. 63, 66–67, 418 S.E.2d 700, 702 (1992) (citation omitted), the Court cannot conclude that Defendant's purported affirmative defense here compels the dismissal of Plaintiff's FMLA claim as a matter of law at this stage of the litigation. Accordingly, the Court concludes that Defendant's motion to dismiss Plaintiff's FMLA claim should be denied at this time, without prejudice to Defendants' right to raise this defense by proper motion after appropriate factual development.

IV.

CONCLUSION

{43}   For the foregoing reasons, the Court hereby **DENIES in part** and **GRANTS in part** MWR's Partial Motion to Dismiss:

a. MWR's Motion to Dismiss is **GRANTED**, and Plaintiff's ADA claim is **DISMISSED** with prejudice, but only to the extent Plaintiff's ADA claim is based on Plaintiff's alleged actual disability in the major life activity of sleeping.

b. Except as provided above, MWR's Motion to Dismiss is **DENIED** as to Plaintiff's ADA claim, including to the extent Plaintiff's ADA claim is based on:

   i. Plaintiff's alleged actual disability in the major life activities of lifting, reaching, and performing manual tasks, and in the operation of Plaintiff's musculoskeletal function;

   ii. Plaintiff's contention that he was "regarded [by MWR] as" having a physical or mental impairment that substantially limits one or more of his major life activities;

   iii. MWR's alleged failure to provide Plaintiff a reasonable accommodation; and

   iv. MWR's alleged retaliation against Plaintiff for engaging in protected conduct;

c. MWR's Motion to Dismiss Plaintiff's FMLA claim is **DENIED,** without prejudice to MWR's right to move to dismiss Plaintiff's FMLA claim based on Plaintiff's failure to comply with MWR's usual notice and procedural requirements, if warranted, after factual development at a later stage of this litigation.

**SO ORDERED**, this the 13th day of May, 2016.

                                          /s/ Louis A. Bledsoe, III
                                          Louis A. Bledsoe, III
                                          Special Superior Court Judge
                                           for Complex Business Cases