**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KAREN SHIELDS,
*Plaintiff-Appellant,*

v.

CREDIT ONE BANK, N.A.; CREDIT
ONE FINANCIAL; SHERMAN
FINANCIAL GROUP, LLC,
*Defendants-Appellees.*

No. 20-15647

D.C. No.
2:19-cv-00934-
JAD-NJK

OPINION

Appeal from the United States District Court
for the District of Nevada
Jennifer A. Dorsey, District Judge, Presiding

Argued and Submitted August 17, 2021
Seattle, Washington

Filed May 6, 2022

Before: William A. Fletcher, Paul J. Watford, and
Daniel P. Collins, Circuit Judges.

Opinion by Judge Collins

# SUMMARY[*]

**Employment Discrimination**

The panel reversed the district court's dismissal of an employment discrimination action under Title I of the Americans with Disabilities Act and remanded.

Kate Shields alleged that her former employer violated the ADA by failing to accommodate her disability and instead terminating her from her human resources job after she underwent a bone biopsy surgery of her right shoulder and arm. The district court concluded that Shields failed to plead a "disability" because she did not adequately allege that she had "a physical or mental impairment that substantially limit[ed] one or more major life activities."

Applying the ADA Amendments Act of 2008 and regulations issued in 2011, the panel held that in order to be substantially limiting, an impairment need not involve permanent or long-term effects. The panel concluded that Shields pleaded facts plausibly establishing that she had a physical impairment both during an immediate post-surgical period and during an extension period in which her surgeon concluded that her injuries had not sufficiently healed to permit her to return to work. The panel also concluded that the activities that Shields pleaded she was unable to perform qualified as "major life activities," which include caring for oneself, performing manual tasks, lifting, and working. Finally, the complaint adequately alleged that Shields's

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

impairment substantially limited her ability to perform at least one major life activity.

## COUNSEL

Michael P. Balaban (argued), Law Offices of Michael P. Balaban, Las Vegas, Nevada, for Plaintiff-Appellant.

David Lawrence Schenberg (argued), Ogletree Deakins Nash Smoak & Stewart P.C., St. Louis, Missouri; Anthony L. Martin, Amy L. Howard, and Dana B. Salmonson, Ogletree Deakins Nash Smoak & Stewart P.C., Los Angeles, California; for Defendants-Appellees.

## OPINION

COLLINS, Circuit Judge:

Karen Shields alleges that her former employer violated Title I of the Americans with Disabilities Act ("ADA") by failing to accommodate her disability and instead terminating her. Because the district court applied the wrong legal standards in holding that Shields had failed to plead a "disability," we reverse its dismissal of Shields's complaint.

## I

Because the district court resolved this case on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we must take as true the operative complaint's well-pleaded allegations, including any such allegations that rely on the incorporation of documents attached to the complaint, and we draw all reasonable inferences in favor of Shields. *See Hawkins v. Kroger Co.*, 906 F.3d 763, 767 n.2 (9th Cir.

2018); *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.4 (9th Cir. 2014). Applying those standards, we take the following facts as established for purposes of this appeal.

In November 2017, Shields began working in the Human Resources ("HR") Department of Defendant Credit One Bank, N.A. ("Credit One") in Las Vegas, Nevada. Her formal job title was "HR Generalist I," and the official job description for that position listed a variety of basic "physical requirements" that "must be met by an employee to successfully perform the essential functions of this job." These requirements included the ability to "use hands to finger, handle, [and] feel," to "reach with hands and arms," and, occasionally, to "lift and/or move up to 2 pounds." The job description also stated, however, that "[r]easonable accommodations may be made to enable individuals with disabilities to perform the essential functions" of the job.

After a concern arose in January 2018 that Shields might have bone cancer, she was scheduled for a bone biopsy surgery, which took place on April 20, 2018. The biopsy surgery was a significant procedure that required a three-day hospitalization. In order to obtain the necessary tissue samples from Shields's right shoulder and arm, the surgeon made what the complaint described as a "10 centimeter skin incision" and created a window "into the bone measuring one centimeter in width by two centimeters in length." Subsequent testing of the samples revealed that "everything was benign" and that Shields did not have cancer after all.

Nonetheless, given the substantial physical impact of the biopsy surgery itself, Shields was unable to return to work for several months. Specifically, her postsurgical injuries prevented her from, *inter alia*, fully using her right arm, shoulder, and hand to lift, pull, push, type, write, tie her shoes, or use a hair dryer. In order to verify Shields's

inability to work, her surgeon, Dr. Hillock, completed a copy of Credit One's standard "ADA Employee Accommodation Medical Certification Form." In completing the form, Dr. Hillock stated that Shields would be unable to perform her essential job functions, with or without accommodation, for two months. In the portion of the form that asked him to identify the "major life activities" that "are substantially limited by the medical condition or accompanying treatment," Dr. Hillock listed "sleeping, lifting, writing, pushing, pulling [and] manual tasks." After submission of the form, Shields was approved for an unpaid, eight-week "medical leave of absence as an accommodation under the ADA." The leave was unpaid rather than paid because Shields did not qualify for paid leave under the Family and Medical Leave Act.

Dr. Hillock initially estimated that Shields would be able to return to work on June 20, 2018. However, as that date approached, Shields still lacked full use of her right shoulder, arm, and hand. Accordingly, on June 18, 2018, Dr. Hillock prepared a note indicating that Shields was still unable to return to work. The relevant portion of the note stated, in its entirety: "Patient has an appointment on 7/10 at which point a return to work date will be discussed. Unable to work until appointment."

Shortly after receiving Dr. Hillock's note, the assistant vice president of Credit One's HR Department called Shields and asked her to come into the office the next day. Shields asked "if she was being fired," and the assistant vice president said that she was not and that they needed her to come in to discuss "her healthcare premium." When Shields reported to the office, however, she was told that her position was being eliminated and that she was therefore being

terminated.    Her  healthcare  coverage  was  consequently terminated about a week later.

Shields filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and she received a "Notice of Right to Sue" on March 5, 2019.  *See* 42 U.S.C. § 12117(a) (stating that employment-based claims under Title I of the ADA are generally subject to the remedies and procedures set forth in Title VII of the Civil Rights Act of 1964); *see also* 42 U.S.C. § 1981a(a)(2) (stating that, in addition to the remedies under Title VII, a plaintiff asserting "unlawful intentional discrimination" in violation of § 102 of the ADA may also recover, subject to certain limitations, "compensatory and punitive damages").  Shields thereafter timely filed this action in the district court in June 2019.  Her operative first amended complaint asserts a single cause of action alleging disability discrimination in violation of § 102 of the ADA.  *See* 42 U.S.C. § 12112.  Specifically, the complaint alleges that, as a reasonable accommodation for her temporary disability arising from the biopsy surgery, Credit One "had a continuing duty under the ADA to extend Shields'[s] medical leave of absence" for the "short" additional period of time "until she was able to return to her job."    Instead, Shields alleged, Credit One unlawfully terminated her.    Shields sought, *inter alia*, back pay, compensatory damages, punitive damages, and attorney's fees.

The district court granted Credit One's motion to dismiss the complaint under Rule 12(b)(6).  The court concluded that, for two reasons, Shields had failed adequately to plead a disability within the meaning of the ADA.  First, citing the 2010 version of the EEOC regulations defining disability, the court held that Shields had failed to plead facts showing "any *permanent or long-term* effects for her impairment"

(emphasis added).  Second, the court concluded that Shields failed to allege sufficient factual detail to "state a plausible impairment" during the requested extension of her medical leave of absence.  The court entered judgment, and Shields filed a timely notice of appeal.[1]

## II

In dismissing this action, the district court relied solely on the ground that the operative complaint failed adequately to allege the threshold element that Shields had a "disability" within the meaning of the ADA.  Section 3, paragraph (1), of the ADA defines the term "disability" as follows:

---

[1] At the time the district court ruled on Credit One's motion to dismiss, the record was unclear as to whether two additional Defendants, Credit One Financial and Sherman Financial Group, LLC, had been served.  As it turned out, they had been served at the outset of the case, but the district court did not know that because Shields at that point had failed to file proofs of service as required by Federal Rule of Civil Procedure 4(*l*)(1).  Shortly before the district court ruled, the court clerk issued a notice stating that, unless Shields filed proofs of service before April 11, 2020, these additional Defendants would be dismissed without prejudice for lack of service under Rule 4(m).  But without awaiting Shields's response to that notice (which was not filed until after judgment was entered), the district court granted Credit One's motion and ordered dismissal of "*this case* with prejudice" and instructed the clerk to "enter judgment accordingly and *close this case*" (emphasis added).  Because the district court's reasons for granting Credit One's motion to dismiss were fatal to the underlying substantive viability of Shields's claim as a whole, the court had authority to enter such a case-dispositive order without resolving the question of whether the remaining Defendants had been served.  *See*, *e.g.*, *Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery*, 44 F.3d 800, 802 (9th Cir. 1995) ("We have upheld dismissal with prejudice in favor of a party which had not yet appeared, on the basis of facts presented by other defendants which had appeared.").  The district court's judgment was therefore final and reviewable, and we have jurisdiction under 28 U.S.C. § 1291.

The term "disability means, with respect to an individual—

    (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

    (B) a record of such an impairment; or

    (C) being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1). On appeal, Shields relies solely on the first of these three alternatives. Accordingly, the question here is whether Shields adequately pleaded that she has "a physical or mental impairment that substantially limits one or more major life activities." *Id*. § 12102(1)(A). The district court concluded that Shields had failed adequately to plead that she had a "disability" under this definition, because (1) she had failed to allege enough facts to establish that she had an "impairment"; and (2) even if she had alleged an "impairment," she had failed to establish a *substantial* limitation arising from that impairment, because she had not pleaded "facts that plausibly show any permanent or long-term effects for her impairment." Because the latter argument implicates the legal standards governing such a claim of disability, we address it first.

## A

In holding that an impairment is not substantially limiting unless it involves "permanent or long-term effects,"

the district court relied dispositively on *Curley v. City of North Las Vegas*, which held that an impairment is not "substantially limiting" if its "expected *long term* impact . . . is small." 2012 WL 1439060, at *3 (D. Nev. 2012) (emphasis added), *aff'd on other grounds*, 772 F.3d 629 (9th Cir. 2014). *Curley* purported to derive this temporal requirement from the definition of "substantially limits" that was contained in the EEOC's 2010 regulations concerning the ADA. Specifically, *Curley* stated that the EEOC regulations provided that, in "determining whether an individual is *substantially limited* in a major life activity," a court should consider: "(i) the nature and severity of the impairment[;] (ii) the *duration* or expected duration of the impairment; and (iii) the *permanent or long-term impact*, or the expected permanent or long-term impact resulting from the impairment." *Id*. (quoting 29 C.F.R. § 1630.2(j)(2) (2010)) (emphasis added). The district court's reliance on *Curley* and the 2010 regulations was legally erroneous.

Section 106 of the ADA has long granted the EEOC authority to "issue regulations" to "carry out" Title I of the ADA, *see* 42 U.S.C. § 12116, and as *Curley* noted, the EEOC invoked that authority in issuing regulations elaborating on the definition of "disability" in the employment context. In 2008, however, Congress enacted the ADA Amendments Act of 2008 ("ADAAA") for the express purpose, *inter alia*, of rejecting the narrow understanding of "substantially limits" that had been adopted in several Supreme Court decisions. *See* ADAAA, Pub. L. No. 110-325, § 2(b)(2), (4)–(5), 122 Stat. 3553, 3554 (2008), 42 U.S.C. § 12101 note. In particular, the ADAAA declares that one of its purposes is to "reject" the Supreme Court's holdings that (1) the phrase "substantially limits" in the ADA's definition of "disability" needs "to be interpreted strictly to create a demanding standard for qualifying as

disabled"; and (2) in order to establish a substantially limiting impairment, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id*. § 2(b)(4) (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197–98 (2002)). Notably, the ADAAA's findings also expressly state that the "current [EEOC] ADA regulations defining the term 'substantially limits' as 'significantly restricted' are inconsistent with congressional intent, by expressing too high a standard." *Id*. § 2(a)(8), 122 Stat. at 3554. The referenced 2008 version of the EEOC regulations that the ADAAA expressly rejects as too restrictive are identical to the 2010 version of the regulations applied by the district court in *Curley* and, derivatively, by the district court in this case.[2]

Although the ADAAA expressly rejects the narrow definition of "substantially limits" in the then-existing EEOC regulations and in *Toyota Motor*, the ADAAA did *not* enact a new general definition of "disabled" or "substantially limits."[3] The ADAAA instead accomplishes its purpose to alter the then-existing state of the law through a series of more indirect measures. First, the ADAAA amended § 3 of the ADA by adding several "[r]ules of construction," together with language directing that the "definition of

---

[2] *Curley* assumed that the 2010 version of the EEOC regulations constituted an amended "post-ADAAA" version, *see* 2012 WL 1439060, at *3, but it was mistaken in that view.

[3] The ADAAA did enact a new definition of § 3's third alternative method of establishing a "disability," namely, that an individual has been "*regarded* as having such an impairment," 42 U.S.C. § 12102(1)(C) (emphasis added). *See* 42 U.S.C. § 12102(3)(A) (defining that phrase). As noted earlier, Shields does not rely on that alternative.

'disability' in paragraph (1) shall be construed in accordance with" them. *See* 42 U.S.C. § 12102(4). These rules of construction include the principles that (1) "[t]he definition of disability in [the ADA] shall be construed in favor of broad coverage of individuals under [the ADA], to the maximum extent permitted by the terms of [the ADA]"; (2) "[t]he term 'substantially limits' shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008"; and (3) "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." *Id*. § 12102(4)(A), (B), (D). Second, the ADAAA directs the EEOC to "revise that portion of its current regulations that defines the term 'substantially limits' as 'significantly restricted' to be consistent with [the ADAAA], including the amendments made by [the ADAAA]." *See* ADAAA, § 2(b)(6), 122 Stat. at 3554. Third, the ADAAA amended the ADA to include, as § 506, the following new provision describing the EEOC's regulatory authority under Title I of the ADA:

> The authority to issue regulations granted to the Equal Employment Opportunity Commission . . . under this [Act] includes the authority to issue regulations implementing the definitions of disability in section [3 of the ADA, 42 U.S.C. § 12102] (including rules of construction) . . . , consistent with the ADA Amendments Act of 2008.

42 U.S.C. § 12205a.[4]

---

[4] Prior to the addition of this language, the EEOC's express regulatory authority in § 106 extended only to issuing regulations to

The EEOC issued new regulations in 2011 that significantly amended the regulatory definition of "[s]ubstantially limits" in 29 C.F.R. § 1630.2(j) and that also revised the accompanying "Appendix" to the rules that included, *inter alia*, "interpretive guidance" concerning that definition. These new provisions confirm that the district court in this case (and the district court in *Curley*) erred in holding that an impairment is "substantially limiting" only if it involves "permanent or long-term" effects.

In particular, the new regulations contain a specific provision, and accompanying guidance, that expressly address the question of whether a temporary impairment can count as a "disability" within the meaning of the ADA. As amended in 2011, the EEOC regulation that defines the phrase "substantially limits" now contains a subsection stating that "[t]he effects of an impairment lasting or expected to last fewer than six months *can* be substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ix) (emphasis added). By its plain terms, the regulation thus explicitly rejects the sort of categorical rule applied by the district court here, under which a "disability" would require a showing of "permanent or long-term effects."

---

carry out *Title I* of the ADA, *see* 42 U.S.C. § 12116 (codified version of § 106) (recognizing regulatory authority to "carry out *this subchapter*," which corresponds to Title I) (emphasis added). The definition of "disability," however, is not in Title I (or, in the codified version, "subchapter I"), but in preliminary provisions that precede it. That might conceivably have supported an argument questioning the EEOC's authority to issue regulations construing that definition. The ADAAA's addition of a new § 506 eliminates any such argument by confirming that the EEOC's regulatory authority affirmatively extends to "implementing" the ADA's definition of "disability . . . (including rules of construction)," even though that definition and its accompanying rules of construction are not in Title I. *See* 42 U.S.C. § 12205a.

This same regulation contains additional language that confirms how the EEOC's rejection of any such categorical "long-term effects" requirement follows from the post-ADAAA language of the ADA.  As noted earlier, the ADA contains three alternative definitions of "disability"—*i.e.*, (1) substantially limiting impairments, (2) a "record of such an impairment," and (3) "being regarded as having such an impairment"—and the ADAAA amended only the third of those three alternatives, which is contained in § 3(1)(C) of the ADA.  *See supra* at 7–8, 10–11 & n.3.  Specifically, the ADAAA added, *inter alia*, the following limitation on this third "regarded as" alternative definition of disability: "Paragraph (1)(C) shall not apply to impairments *that are transitory and minor*.  A transitory impairment is an impairment *with an actual or expected duration of 6 months or less*."  42 U.S.C. § 12102(3)(B) (emphasis added).  The fact that Congress added such a "transitory and minor" limitation *only* to the "regarded as" alternative in § 3(1)(C) and *not* in the other two alternative definitions of "disability" strongly confirms that no such temporal limitation applies to those other two alternatives.  *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citation omitted).  The EEOC's regulation recognizes this statutory distinction by expressly providing that the six-month "transitory and minor" limitation applies only to the "regarded as" prong of the definition of disability and "does not apply to the definition of 'disability' under paragraphs (g)(1)(i) (the 'actual disability' prong) or (g)(1)(ii) (the 'record of' prong) of this section."  29 C.F.R. § 1630.2(j)(1)(ix).

The explanatory guidance that accompanies § 1630.2(j)(1)(ix) further confirms that the "effects of an impairment lasting fewer than six months can be substantially limiting." 29 C.F.R., Pt. 1630, App. (portion addressing § 16302.(j)(1)(ix)) (capitalization omitted). The guidance explains that, although the "duration of an impairment" remains "one factor that is relevant in determining whether the impairment substantially limits a major life activity," there is no categorical rule excluding short-term impairments, which "may be covered if sufficiently severe." *Id*. (citation omitted). As the guidance explains:

> [A]n impairment does not have to last for more than six months in order to be considered substantially limiting under the first or the second prong of the definition of disability. For example, as noted above, if an individual has a back impairment that results in a 20-pound lifting restriction *that lasts for several months*, he is substantially limited in the major life activity of lifting, and therefore covered under the first prong of the definition of disability.

*Id*. (emphasis added).

Because the ADA and its implementing EEOC regulations make clear that the actual-impairment prong of the definition of "disability" in § 3(1)(A) of the ADA is not subject to any categorical temporal limitation, the district court committed legal error in holding, based on the pre-ADAAA regulations, that a claim of such an actual "impairment" requires a showing of long-term effects. *Cf. Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 331–32 (4th

Cir. 2014) (upholding as reasonable under *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), the EEOC regulation's inclusion of "severe temporary impairments" within § 3(1)(A)'s definition of actual "disability").[5]

## B

The only remaining question is whether Shields adequately pleaded that she had a "disability" under the correct legal standards. To establish a "disability" under the first alternative definition in § 3(1)(A), Shields had to plead facts plausibly establishing that she had "[1] a physical or mental impairment [2] that substantially limits [3] one or more major life activities." 42 U.S.C. § 12102(1)(A). We conclude that Shields adequately pleaded all three elements.

First, the operative complaint pleads sufficient facts to establish an "impairment." The complaint alleges that Shields's bone biopsy surgery involved a 10-centimeter incision that "created a wi[n]dow into the bone measuring one centimeter in width by two centimeters in length for the purpose of harvesting tissue from [Shields's] shoulder and arm." The substantial injuries inherent in this intrusive surgery rendered Shields, according to the complaint, "unable to fully use her right shoulder, arm and hand" and unable to perform such tasks as "lifting, pushing and pulling things with her shoulder, arm and hand, typing on a computer keyboard or otherwise, handwrit[ing], or even [tying] her shoes or lift[ing] a hair dryer to dry her hair."

---

[5] In contrast to the defendant in *Summers*, Credit One has not "contend[ed] that the EEOC regulations defining a disability to include short-term impairments do not warrant deference under *Chevron*." 740 F.3d at 331.

Although it was anticipated that Shields would recover from these surgery-related injuries by June 20, 2018, the complaint alleges that Dr. Hillock concluded on June 18, 2018 that Shields was still unable to work.  These allegations adequately allege that, due to her biopsy surgery, Shields had a physical "impairment," both in the ordinary sense of that term and in the sense described in the EEOC's regulations. *See Impairment*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1981 ed.) ("the state of being impaired: INJURY"); *Impair*, *id*. ("to make worse: diminish in quantity, value, excellence, or strength: do harm to: DAMAGE, LESSEN"); *see also* 29 C.F.R. § 1630.2(h)(1) (defining a physical impairment to include "[a]ny physiological disorder or condition . . . affecting one or more body systems").

In reaching a contrary conclusion, the district court drew a distinction between Shields's initial condition in the first eight weeks after her surgery and her condition "during the extension period."  As to the latter, the court held, Shields needed to plead additional facts "explaining the cause for the extension" and setting forth more specifically "her limitations during the extension period."  We disagree.  As the district court implicitly recognized, the allegations concerning Shields's condition during the initial eight weeks are sufficiently "well-pleaded" to "give rise to a plausible inference" that she had an impairment, *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009), and we think the same is true when the complaint adds the further factual allegation that Shields's surgeon had concluded that her condition had not improved sufficiently by the end of those eight weeks to permit her to return to work.  While it perhaps would have been a wise legal strategy for Shields to have supplied, in her amended complaint, the additional detail that the district court had requested, *Iqbal* did not require Shields to include

more granular details about the exact nature of her then-existing limitations that caused the surgeon to conclude that her injuries had not sufficiently healed.  *See id*. at 678 (although the "pleading standard Rule 8 announces" requires more than "unadorned" conclusory assertions, it "does not require 'detailed factual allegations'") (citation omitted).

Second, the activities that Shields pleaded she was unable to perform qualify as "major life activities" under the ADA.  42 U.S.C. § 12102(1)(A).  The ADA expressly states that "major life activities include, but are not limited to, *caring for oneself*, *performing manual tasks*, seeing, hearing, eating, sleeping, walking, standing, *lifting*, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and *working*."  *Id*. § 12102(2)(A) (emphasis added).  Here, the complaint specifically alleges that Shields's post-surgery injuries impeded her ability to lift, to perform basic grooming tasks necessary to care for herself, and to perform manual tasks such as pushing or pulling.  The complaint further alleges that Shields was unable to perform some of the core physical tasks included in her job description, such as lifting, reaching, fingering, and handling, which indicates that her ability to "work" was implicated as well.  *Cf. Weaving v. City of Hillsboro*, 763 F.3d 1106, 1112 (9th Cir. 2014) (stating that, under post-ADAAA law, a claim that a plaintiff has a "substantial limitation on his [or her] ability to work" would require "showing that [the plaintiff] was limited in his [or her] ability to work compared to 'most people in the general population'" (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).  These allegations amply describe "major life activities" as defined by the ADA.

Finally, the complaint adequately alleges that Shields's impairment "substantially limit[ed]" her ability to perform

these major life activities. As amended by the ADAAA, the ADA expressly provides that the "determination of whether an impairment *substantially limits* a major life activity shall be made without regard to the ameliorative effects of mitigating measures," such as medication, medical supplies, or other aids. 42 U.S.C. § 12102(4)(E)(i) (emphasis added). The ADA further states that an impairment need only substantially limit *one* major life activity in order to give rise to a covered disability. *Id*. § 12102(4)(C). The statute also provides that, as a general matter, the definition of "disability" is to be "construed in favor of broad coverage of individuals" under the ADA, "to the maximum extent permitted by the terms" of the Act. *Id*. § 12102(4)(A). The definition of "substantially limits," in particular, is to "be interpreted consistently with the findings and purposes" of the ADAAA, *id*. § 12102(4)(B), which include the admonition that "the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis," *see* ADAAA, § 2(b)(5), 122 Stat. at 3554. *See also* 29 C.F.R. § 1630.2(j)(1)(i) ("'Substantially limits' is not meant to be a demanding standard."). Taking these standards together with those we have set forth earlier, *see supra* at 12–15, we conclude that Shields's complaint sufficiently pleads a substantial limitation on her ability to perform at least one major life activity.

As we have explained, *see supra* at 14, the formal guidance accompanying the amended EEOC regulations specifically states that a temporary impairment that impedes the performance of a major life activity and that "lasts for several months" is "sufficiently severe" to qualify as "substantially limiting" within the meaning of the ADA and the EEOC regulations. 29 C.F.R., Pt. 1630, App. (portion addressing § 1630.2 (j)(1)(ix)). Thus, while Credit One is correct in noting that the guidelines confirm that the

"duration of an impairment" remains "one factor that is relevant in determining whether the impairment substantially limits a major life activity," Shields's alleged impairment—which involved a substantial inability to perform certain major life tasks for more than two months—is clearly of sufficient duration and impact to qualify. *Id.*; *see also Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 436 (9th Cir. 2018) (holding that, under post-ADAAA amendments and regulations, plaintiff was substantially limited in the major life activities of "lifting and possibly working" when his "shoulder injury" impaired his ability to lift his arm "above chest height" without experiencing "stabbing pain and numbness" and precluded him from lifting more than 25 pounds).

\*     \*     \*

Because Shields adequately alleged that, during the period of her requested extension, she suffered from a "disability" within the meaning of the ADA, we reverse the district court's dismissal of her operative complaint.

**REVERSED** and **REMANDED**.